**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Terence COULVERSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 17, 2011.

Filed Nov. 29, 2011.

Suzanne M. Swan, Chief Public Defender and Scott B. Rudolf, Public Defender, Pittsburgh, for appellant.

Karen Edwards, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: BENDER, DONOHUE and PLATT*, JJ.

OPINION BY BENDER, J.:

Terence Coulverson appeals the judgment of sentence imposed following his entry of an open plea of guilty, to charges of Rape, Involuntary Deviate Sexual Intercourse (IDSI), Sexual Assault, Aggravated Indecent Assault, Indecent Assault (two

---

* Retired Senior Judge assigned to the Superior Court.

counts), Robbery, Unlawful Restraint, and Terroristic Threats, (CP–02–CR–11616–2009) as well as False Identification to Law Enforcement (CP–02–CR–11615–2009), Burglary (four counts), and Robbery (CP–02–CR–12732–2009), Theft (two counts) and Receiving Stolen Property (CP–02–CR–14986–2009). Following review of a pre-sentence investigation (PSI) report, the trial court imposed an aggregate sentence commencing in the standard range of the Sentencing Guidelines, and running to the statutory maximum for each of the offenses on which sentence was imposed. Consequently, Coulverson's sentence spans 18 to 90 years in prison. In this appeal, Coulverson concedes the appropriateness of the lower range of the sentence but contests the imposition of multiple statutory maximums which, even given his youthful age of nineteen, may constitute a life sentence and do require life on parole. Coulverson asserts, *inter alia*, that such a sentence is manifestly excessive and that the trial court failed to state sufficient reasons on the record to justify its imposition. Upon review, we conclude that the sentence imposed for Aggravated Indecent Assault exceeds the statutory maximum, and that the trial court's imposition of release conditions on this state-level sentence exceeds its lawful authority. Moreover, we find the maximum sentence imposed "clearly unreasonable" within the meaning of 42 Pa.C.S. § 9781(c). Accordingly, we vacate Coulverson's judgment of sentence and remand this case for re-sentencing.

At the guilty plea hearing, the Commonwealth's offers of proof established that Coulverson committed a series of crimes spanning the period from July 10 to July 12, 2009. The first of those offenses, charged at CP–02–CR–11616–2009, consisted of rape and related sex offenses. Had the case been presented at trial, the evidence would have shown that on the night of July 10, the victim alighted from a bus at the corner of Stanton and Negley Avenues in Pittsburgh en route to her home in the Stanton Heights section of the city. As the victim walked up Stanton Avenue, occasionally turning to watch for an oncoming bus, she talked on a cell phone with her mother, who expressed concern for the victim's safety given the location and the time of night. Coulverson followed the victim up the street, and as she talked, he quickened his pace, closing in behind her. When he got near enough, Coulverson assaulted the victim from behind, grabbing her in a headlock and dragging her down a wooded embankment somewhere in the vicinity of Morningside. On the other end of the phone, the victim's mother heard sounds of a struggle and then the connection went dead, as Coulverson covered the victim's mouth and snatched and broke the victim's cell phone. N.T. Guilty Plea, 1/31/11, at 10–21.

As the victim's mother called the police to come to her daughter's aid, Coulverson continued the assault shoving the victim to the ground, throttling her about the neck and lying on top of her as she attempted to scream and fight. However, overpowered, fearful for her life, and uncertain that anyone would hear her continued screams, the victim began to cooperate as Coulverson tore off her pantyhose and removed her underwear. He then exposed himself, rubbed his penis over her lower body, and inserted himself, asking the victim if it was in and if it felt good. As the victim begged Coulverson not to hurt her, telling him that she had a family, he removed his penis and penetrated her anus and vagina with his fingers. As the victim again began to cry, Coulverson demanded that she perform oral sex on him and, when she did, asked if she ever did it with her husband. He then performed oral sex on her and pulled up her jacket and blouse,

licking her breast and abdomen. Ultimately, Coulverson ended the assault by asking the victim if she had any money and then rifling through her purse and taking $10 and her bank card, as well as some receipts. He then told the victim to count to twenty while he ran from the scene. After the victim had counted, she made her way to Stanton Avenue and flagged down a passing car, the driver of which stopped and assisted her, taking her to a local hospital. An examination revealed abrasions on the victim's neck, face, eyes, hand, large chunks of dirt under her fingernails, scratches and abrasions on the main part of her body as well as dirt and debris around her vulva and near her anus. *Id.*

Subsequently, the victim provided details to a police sketch artist who created a likeness, on the basis of which investigators apprehended Coulverson. Although he initially provided a false name, Coulverson then admitted he had lied and police arrested him for false identification. After being issued a *Miranda* warning, Coulverson offered a confession the details of which were substantially identical to those provided by the victim. DNA testing of the assailant's saliva and semen samples retrieved from the victim showed an amylase match of one 1 in 38,000, and a spermatozoa match of 1 in 44,000,000. *Id.*

Additional evidence would have established that on the days following the rape, Coulverson burgled, robbed, or assaulted four additional victims. On July 11, 2009, Coulverson broke into the Hampton Avenue home of Elizabeth Douring on the first of three occasions. During those break-ins, Coulverson stole a laptop computer as well as change and other items in the house. Afterward, he walked down the street looking for unlocked vehicles, finding a Hyundai Accent in which the owner, Richard Shannon, had left the keys. Coul-

verson absconded with the vehicle, took $20 he found inside and then abandoned the car on a nearby street when it developed a flat tire.

Coulverson continued victimizing the Hampton Avenue neighborhood on July 12 when, as Paula Beattie alighted from a bus *en route* to her home, Coulverson knocked her to the ground, covered her nose and mouth and threatened her, warning that he had an anger problem and that she had better not scream. Although Beattie was able to escape, Coulverson made off with her purse, cell phone and keys. Finally, on July 26 and 27, Coulverson broke into the home of Amanda Makarevich, entering through a rear window, and stole alcohol, a digital camera, and a cell phone.

Following his apprehension, Coulverson confessed his crimes to the police and ultimately entered the open plea of guilty that is basis for the sentence at issue here. The trial court ordered a pre-sentence investigation. The resulting report showed that Coulverson committed his crimes at the age of nineteen after a series of hardships in childhood that included the loss of his mother in an auto accident when he was six, followed by life for seven years with an abusive alcoholic stepfather, an adjudication of dependency and a foray into drug abuse. At the time of these events, Coulverson was living in an abandoned house that had belonged to his deceased grandmother and had no means of sustenance.

In advance of sentencing, the trial court reviewed the PSI report and also received testimony on Coulverson's behalf from his sister and his maternal aunt. The Commonwealth, in turn, presented victim impact testimony from Elizabeth Douring as well as rape victim, J.T., her mother, her husband, and a friend. Thereafter the trial court imposed the sentence at issue here. Coulverson filed a motion for post-

sentence relief and argued through counsel that the upper end of the sentence, which consisted of statutory maximums imposed consecutively, was excessive, not individualized, and not adequately explained on the record. Nevertheless, the trial court declined to impose a lesser maximum, rendering the sentence at issue of 18 to 90 years' incarceration.

Coulverson has now filed this appeal, raising the following questions for our review:

1. Should the 90–year maximum sentence imposed by the trial court be set aside, and Appellant's case remanded for a de novo re-sentencing hearing, because (A) the trial court neglected to provide proper justification for imposing such an extraordinarily long maximum sentence (with its rationale appearing to be that it would simply impose the statutory limit as a maximum sentence on any count on which it could impose sentence); and, alternatively, (B) the length of the aggregate maximum sentence was and is manifestly excessive given the totality of the circumstances of this case?

2. Should the sentencing order issued by the trial court be deemed illegal due to the fact that (A) the maximum sentence imposed on Allegheny County Criminal Compaint No. 2009–11616 Count Four (a second-degree felony having a statutory limit of 10 years of confinement) was sanctioned with a 20–year maximum sentence; and, further, (B) the order sets an illegal "No Contact" condition of state parole for Criminal Complaint Nos. 2009–11615, 2009–11616, 2009–12732, and 2009–14986?

Brief for Appellant at 3.

■ Before proceeding, we note that both the trial court and the Commonwealth concede the illegality of Coulverson's sentence at No. 2009–11616 Count Four (Aggravated Indecent Assault), on which the trial court imposed a term of two to twenty years' incarceration. As the Commonwealth recognizes in its Brief for Appellee, Aggravated Indecent Assault is a felony of the second degree for which the maximum term of incarceration is ten years. *See* 18 Pa.C.S. §§ 3125(c)(1), 1103(2). Inasmuch as Coulverson's sentence for that offense spans twenty years, its imposition exceeds the trial court's lawful authority, rendering the sentence illegal and subject to *vacatur. Cf. Commonwealth v. Britton,* 334 Pa.Super. 203, 482 A.2d 1294, 1304 (1984) (vacating 10–to–20 year sentence for robbery offense graded as a second-degree felony as sentence exceeded ten-year maximum applicable to such offenses). Thus, pursuant to the statutory authority reposed in this Court under 42 Pa.C.S. § 9781(b), (f), we are constrained to vacate the judgment of sentence and remand this case to the trial court for re-calculation of the sentence, including, but not limited to the sentence imposed at No. 2009–11616 Count Four (Aggravated Indecent Assault).

■ Additionally, the Commonwealth concedes (although the trial court does not) that the court's imposition of a "no contact" restriction with any of the victims, their families or friends following release on parole (should such release be granted) exceeds the court's lawful authority. Brief for Appellee at 14–16 (citing *Commonwealth v. Mears,* 972 A.2d 1210, 1211 (Pa.Super.2009)). We agree. In *Mears,* we recognized expressly that " 'the Pennsylvania Board of Probation and Parole has exclusive authority to determine parole when the offender is sentenced to a maximum term of imprisonment of two or more years[.]' Therefore, any condition the sentencing court purported to impose on Ap-

pellant's state parole is advisory only." *See Mears,* 972 A.2d at 1211 (quoting *Commonwealth v. Camps,* 772 A.2d 70, 74 (Pa.Super.2001)). The conclusion we reached in *Mears* is currently codified at 61 Pa.C.S.A. §§ 6132(a) and 6134(b)(1), (2) ("A recommendation made by a judge under paragraph (1) respecting the parole or terms of parole of a person shall be advisory only. No order in respect to the recommendation made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions conferred on it by this chapter."). Accordingly, to the extent the trial court purported to impose conditions of parole in its sentencing order, those conditions and the order exceed the bounds of the court's authority and are subject to *vacatur,* which we hereby direct.

■ We now focus our consideration of the challenges raised in Coulverson's first question. In that question, Coulverson challenges the trial court's exercise of discretion in imposing a criminal sentence. Accordingly, his right to appellate review is not absolute. *See Commonwealth v. Fiascki,* 886 A.2d 261, 263 (Pa.Super.2005); *Commonwealth v. Hoch,* 936 A.2d 515, 518 (Pa.Super.2007) ("A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal[.]"). The Rules of Appellate Procedure mandate that to obtain review of such claims, the appellant must include in his brief a Concise Statement of Reasons Relied Upon for Allowance of Appeal. *See id.; see also* Pa.R.A.P. 2119(f). The defendant's Concise Statement must, in turn, raise a substantial question as to whether

the trial judge, in imposing sentence, violated a specific provision of the Sentencing Code or contravened a "fundamental norm" of the sentencing process. *See Fiascki,* 886 A.2d at 263; *Commonwealth v. Ousley,* 392 Pa.Super. 549, 573 A.2d 599, 601 (1990) (citations and internal quotation marks omitted) ("[A]ppeals from the discretionary aspects of sentence are not to be granted as a matter of course, but . . . only in exceptional circumstances where it can be shown in the 2119(f) statement that despite the multitude of factors impinging on the sentencing decisions, the sentence imposed contravenes the sentencing code.") The determination of whether a particular issue poses a substantial question is to be made on a case-by-case basis. *See Fiascki,* 886 A.2d at 263. If the Rule 2119(f) statement is absent or if the statement provided fails to demonstrate a substantial question, this Court may refuse to accept the appeal. *See id.*

■ In this case, Coulverson has included a Rule 2119(f) statement asserting individual bases for consideration of each of the questions he has posed. Given the Commonwealth's concession of the claims enunciated in Coulverson's question number two, we need not consider those portions of the statement.[1] In support of his first question, Coulverson states two additional bases for review, the first of which impugns the court's statement of its rationale in accordance with 42 Pa.C.S. § 9781(b) for imposing the maximum sentences at issue here. Coulverson first contends that his claim is reviewable as a matter of right as it involves a purported

---

1. Inasmuch as both of those claims raise the facial illegality of the sentence imposed, they are not subject to the reach of Rule 2119 in any event and are entitled to review as a matter of right. *See Commonwealth v. Foster,* 960 A.2d 160, 164 (Pa.Super.2008) ("Certain sentencing issues unequivocally relate to the legality of sentence. Any claim pertaining to whether a sentence exceeds the lawful maximum falls into that category."); *Mears,* 972 A.2d at 1211 (recognizing that a trial court has no lawful authority to impose parole conditions on a state sentence).

failure by the trial court to follow a mandated sentencing procedure. Brief for Appellant at 7 ("[Coulverson's] first contention in this appeal is that the trial court's 90–year maximum sentence was improperly imposed due to the fact that the trial court's statement in justification for that sentence, required by 42 Pa.C.S. 9721(b), was deficient, in that it failed to state a permissible basis for imposition of the maximum term imposed."). We find this claim inconsistent. Section 9721(b) requires only that the trial court state on the record its reasons for the imposition of sentence; it does not bear on the legal adequacy or correctness of the reasons stated. Consequently, any statement of reasons would appear to comply with the letter of Rule 9721(b), and cannot be deemed reviewable *as of right*. However, to the extent that Coulverson's claim impugns the trial court's failure to offer specific reasons for the sentence that comport with the considerations required in section 9721(b), *see* Brief for Appellant at 9 (citing *Commonwealth v. Reynolds*, 835 A.2d 720, 734 (Pa.Super.2003)), we conclude that it raises a substantial question of the court's justification in extending Coulverson's standard range sentences to the statutory maximum. Although the process by which a trial judge balances the factors and circumstances bearing on the sentence is clearly a discretionary function of the trial court, we find that the manner in which a trial judge exercises that discretion does raise a substantial question for appellate review under these circumstances. *See Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa.Super.2006).

Also in support of his first question, Coulverson contends that the 90–year maximum sentence the trial court imposed is manifestly excessive. Brief for Appellant at 9. Although he acknowledges that the sentence imposed must be consistent with the protection of the public and gravity of the offense, he also argues that the sentence takes no account of his rehabilitative needs and is disproportionate to the circumstances when adjudged as a whole. To buttress his claim, Coulverson cites the troubled circumstances of his background, his homelessness and destitution, the absence of a prior record score or any record of delinquency, and his remorse and cooperation with the police. We have concluded in prior cases that claims of excessiveness may be justiciable as substantial questions based on the circumstances of the case and the extent to which the appellant's Rule 2119(f) statement suggests the trial court's deviation from sentencing norms. *See Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa.Super.2005) (concluding that appellant's averments of excessiveness of sentence raised a substantial question where trial court couched its reasons for the sentence imposed in terms of the seriousness of the offense and victim impact without consideration of the defendant's expressions of remorse, desire to make restitution, and lack of a prior criminal record). Given the circumstances at issue here as well as the extraordinary length of the maximum sentence, we conclude that Coulverson's related claim does raise a substantial question for appellate review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*) (quotations marks and citations omitted). *See also Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957, 961 (2007) (citation omitted) ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice bias or ill-will, or such a lack of support as to be clearly erroneous.").

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Ward,* 524 Pa. 48, 568 A.2d 1242, 1243 (1990); *see also Commonwealth v. Jones,* 418 Pa.Super. 93, 613 A.2d 587, 591 (1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime."). Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review.

*Id.* Nevertheless, the trial court's discretion is not unfettered. "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant.... [A]nd, of course, the court must consider the sentencing guidelines." *Fullin,* 892 A.2d at 847–48.

In this matter, *the trial court's application of the Guidelines is not at issue;* the court commenced each of Coulverson's respective prison terms in the standard range and Coulverson does not mount a challenge to the minimum aggregate sentence. Brief for Appellant at 18 ("Appellant stresses that his challenge in this Court ... is to the ***maximum*** aggregate confinement sentence that was imposed; *i.e.* to the "90" figure in the 18–to–90 year aggregate sentence that was imposed upon him. He has not brought any challenge to the aggregate minimum sentence....") Coulverson argues instead that the upper end of the sentence, which consigns him to prison potentially for the rest of his life, is not supported by a statement of record adequate to conform with the Sentencing Code and is excessive in light of the circumstances that foreshadowed his offense. Coulverson argues further that subsequent statements the trial court made at post-sentence argument reflect either the court's unawareness of its own discretion in sentencing or a pre-determination to impose a maximum sentence without regard to the circumstances of record.

Upon review, we find that the trial court's discussion in support of the sentence is minimal. It did not expound on specific sentencing factors but instead premised the sentence imposed on testimony adduced primarily from the rape victim, her family and friends. To justify its sentence on the record, the court made only the following statement:

Mr. Coulverson, I've listened to everything that everyone had to say, including you, your lawyer, your family, the victim, the victim's family, the victim's friends. I reviewed the presentence investigation report, which I have considered along with the other information. The destruction you've caused to [the victim], her family, her friends, your family, your friends, the future generations of all those people will last forever.

N.T., Sentencing Hearing, 8/11/10, at 38–39. The Court then imposed the sentences at issue here. Subsequently, when challenged by defense counsel on the first day of a two-day bifurcated post-sentence hearing, the court demurred to any suggestion that it might have discretion to impose a maximum sentence of less than the statutory limit. That exchange follows:

[DEFENSE COUNSEL]: Your Honor, I understand the minimum sentence[s] [are] in the standard range. I believe this is a case that has the mitigating factors which I already articulated at sentencing, asking the Court to consider reducing the [aggregate] minimum.

\* \* \* \*

THE COURT: And these were all standard range sentences, weren't they?

[DEFENSE COUNSEL]: Yes, I'm asking [the court] to reduce the maximum.

THE COURT: You don't like the statutory maximum; but shouldn't you be addressing that to the legislature?

N.T., Post–Sentencing Motion, 12/7/10, at 3–5. Thereafter, at the second portion of that hearing, convened approximately two weeks later, the court remained unmoved in its insistence on imposing the statutory maximum for every crime on which it imposed sentence. Despite defense counsel's emphasis on individualized factors bearing on Coulverson's needs and circumstances, the court declined to reconsider its sentence, apparently, as the Commonwealth recognized, in reliance on the victim impact statements read by the victim and her husband at the sentencing hearing. At no time has the trial court offered any rationale for the sentence imposed other than what we have reproduced here. We find that omission troubling.

The Pennsylvania Sentencing Code vests this Court with exclusive jurisdiction to review the discretionary aspects of a sentence imposed by a trial court. 42 Pa.C.S. § 9781(b), (f). The Code defines certain elements of our review, directing that our evaluation "shall have regard for" the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

*Id.* at § 9781(d).

■ Considering the sentence accordingly we note that the term of imprisonment the court imposed is technically within the standard range of the guidelines. We acknowledge that the trial court's interposition of the sentence floor in the standard range obviates the necessity of stating circumstances sufficient to justify a minimum sentence above the aggravated range.[2] Nevertheless:

whether or not there is a departure from the guidelines, a court imposing sentence for a felony or misdemeanor shall make part of the record, and disclose in open court during sentencing, a statement of the reasons for the sentence. The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b). However, the record as a whole must reflect due consideration by the court of the statutory considerations [enunciated in that section].

2. Regrettably, however, the trial court indicated no awareness of the guideline ranges, except to characterize the sentence as one in the standard range.

*Commonwealth v. Feucht,* 955 A.2d 377, 383 (Pa.Super.2008). *See also Commonwealth v. Malovich,* 903 A.2d 1247, 1253 (Pa.Super.2006) ("[T]he record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender."). Although the court did note the presence of a pre-sentence report, which we presume it considered, *see Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12, 18–19 (1988), its discussion of sentencing rationale is otherwise so summary as to offer no suggestion that it considered anything other than the seriousness of Coulverson's offenses. Significantly, at the sentencing hearing, the court offered no acknowledgement whatsoever of the Sentencing Guidelines except to document that the lower end of the sentences it imposed was in the standard range. Moreover, although the court imposed a prison sentence for Felony I Burglary at CP–02–CR–0012732–2009, it provided no discussion whatsoever of the circumstances involved or its reasoning in imposing that sentence. Additionally, although the court pronounced an illegal 20–year Robbery sentence for Coulverson's theft of $10 from the rape victim's purse, it never adverted to the underlying circumstances or explained why that offense merited such a sentence. Indeed, even coupled with its admonition emphasizing the impact on the rape victim and her family, *supra,* the court's discussion offers a regrettably scant explanation for imposition of sentence on any of Coulverson's convictions. Although we do not dispose of this appeal on that basis, we are troubled by the court's cursory treatment of so weighty a matter, as the 90–year aggregate maximum potentially consigns a 19–year–old defendant with mental health problems to life in prison without even a nod to relevant sentencing factors.

■ Significantly, the court's imposition of a "standard range" sentence would appear to circumscribe appellate review, obliging us to apply the "clearly unreasonable" standard set out in 42 Pa.C.S. § 9781(c)(2), as opposed to the standard of unreasonableness applicable had the sentence commenced in the aggravated range. Nevertheless, it does not circumvent review—or the need for *vacatur* of a manifestly excessive sentence. Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." *Commonwealth v. Bowen,* 975 A.2d 1120, 1123–1124 (Pa.Super.2009) (quoting 42 Pa.C.S. § 9781(c)). Therefore, "[t]he primary consideration ... is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa. C.S. § 9781(c)." *Id.*

Here, the sentence imposed is indisputably "within the guideline range," notwithstanding the trial court's imposition of consecutive sentences, the maximum term of which, in every instance, is the highest allowed by law. Consequently, we must determine whether the sentence imposed is "clearly unreasonable." *Commonwealth v. Dodge,* 957 A.2d 1198, 1200 (Pa.Super.2008) (citing 42 Pa.C.S. § 9781(c)(2)). Significantly, our Supreme Court has "decline[d] to fashion any concrete rules as to the unreasonableness inquiry...." *Commonwealth v. Holiday,* 954 A.2d 6, 11 (Pa.Super.2008) (quoting *Walls,* 926 A.2d at 963). Moreover, the Court has clarified that "the General Assembly intended the

concept of unreasonableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition." *Walls*, 926 A.2d at 963. Nevertheless, the Court has recognized that the extent of a trial judge's compliance with both sections 9721 and 9781 is of persuasive value in evaluating the reasonableness or lack thereof of the sentence imposed. In *Walls*, the Court reasoned as follows:

> We are of the view, however, that the Legislature intended that considerations found in Section 9721 inform appellate review for unreasonableness. That is, while a sentence may be found to be unreasonable after review of Section 9781(d)'s four statutory factors, in addition a sentence may also be unreasonable if the appellate court finds that the sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing found in Section 9721, *i.e.,* the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of the defendant.

*Id.* at 964. *See also Dodge,* 957 A.2d at 1200 ("[A] sentence may be unreasonable if the sentencing court fails to consider the factors set forth in § 9721(b)"). We have deemed these same considerations applicable to a determination that a sentence is "clearly unreasonable." *See Commonwealth v. Moore,* 420 Pa.Super. 484, 617 A.2d 8, 12 (1992) "In determining whether a particular sentence is 'clearly unreasonable' or 'unreasonable,' the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the presentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commis-

sion, and the 'findings' upon which the trial court based its sentence."

■ In accordance with our Supreme Court's pronouncement in *Walls,* we acknowledge the inherent fluidity of the "reasonableness" inquiry as well as the nuanced discretion that hallmarks the sentencing process. *See Walls,* 926 A.2d at 963. In accordance with our own decision in *Dodge,* which applied *Walls* on remand, we also recognize that individualized sentencing remains the controlling norm of the sentencing process and that a sentence befitting one defendant may not befit another. Hence, in *Dodge,* we concluded that a sentence spanning the remainder of the defendant's life was "clearly unreasonable" within the meaning of *Walls* even though the defendant, at 42, had a long criminal history and was sentenced for multiple offenses. *See Dodge,* 957 A.2d at 1202. The circumstances underlying the defendant's crimes in *Dodge* do not inform our decision here, as the defendant had committed numerous property crimes rather than "crimes against the person." *Id.* at 1201. We do find guidance, however, in the panel's recognition that the trial judge imposed sentence not on a nuanced consideration of the statutory factors delineated in sections 9721 and 9781 but with "a fixed purpose of keeping Appellant in jail for his life." *Id.* In *Dodge,* as here, the trial court imposed sentences commencing in the standard range of the guidelines but ordered them to run consecutive to one another on 37 counts, rendering an aggregate sentence of 58½ to 124 years' incarceration. *Id.* at 1200. Although the court had the benefit of a PSI report, as well as an ample opportunity to observe the defendant, and cited the defendant's failed history of rehabilitation, we found the court's sentencing decision "irrational" and "clearly unreasonable." *Id.* at 1202. Specifically citing the trial court's "fixed purpose of

keeping Appellant in jail for his life," *id.* at 1201, we eschewed the court's excessive emphasis on retribution at the expense of other statutorily mandated considerations, *e.g.*, 42 Pa.C.S. §§ 9781(d)(1) ("The nature and circumstances of the offense and the history and characteristics of the defendant"), and remanded the matter for imposition of a truly individualized sentence shorn of the trial judge's evident agenda. *Id.* at 1202.

■ In this case, as in *Dodge*, the record reveals scant consideration of anything other than victim impact and the court's impulse for retribution on the victims' behalf. In so recognizing, we hasten to acknowledge that the victims in this case, particularly those stricken by the rape and its aftermath, are casualties of a social and personal tragedy that has profoundly altered the courses of their lives. Their losses are the product of brutal, senseless acts and anathema to individual dignity in an ordered society. Nevertheless, those losses do not obviate the legal and social imperative that a defendant's punishment must fit not only the crime he committed, as reflected here in the impact statements of the victims at sentencing, but also must account for the rehabilitative need of the defendant, and the companion interest of society reflected in sections 9721(b) and 9781(d).

■ These needs are not served merely because the sentencing judge elects to commence a sentence in the standard range of the Sentencing Guidelines. Other factors too, including the term of the maximum sentence (regardless of the *availability* of statutory maximums or consecutive sentencing), also bear on the extent to which sentencing norms are observed and an appropriate sentence imposed. A sentence may still be excessive regardless of the commencement of terms of imprisonment in the standard guidelines range if the upper end of the sentence imposes a term unlikely to end during the defendant's natural life span or, as here, perpetually subject to the discretion of the Board of Probation and Parole. We remain mindful, as must our trial courts, that a maximum sentence is a *sentence of confinement* to be prorogued only as "a favor given by the state, as a matter of grace and mercy...." *Mickens–Thomas v. Pa. Bd. of Prob. and Parole*, 699 A.2d 792, 796 (Pa.Cmwlth.1997). Issuance of parole may not be assumed and may not be treated as a tool of rehabilitation; presumably, a defendant's rehabilitation has already been achieved if parole is granted. Consequently, parole, imposed as a byproduct of an outsize maximum sentence, is not a legitimate means of implementing the statutory goals of criminal sentencing. Thus, the term of imprisonment must be individualized *in its entirety as a sentence of confinement* and not treated as a means to indefinite parole, or worse, as a means of private retribution or judicial policy-making.

■ In this case, the trial court imposed a maximum sentence of confinement of 90 years (80 if legally sentenced, pursuant to our discussion, *supra*), which we regret to conclude, violated this precept in sentencing. The court's discussion at argument on Coulverson's post-sentence motion strongly suggests its determination that the defendant should spend as much of his life in prison as the court could order, notwithstanding the tragedy and dysfunction underlying Coulverson's own life, his individual need for effective intervention, or any rehabilitation he might achieve. The following discussion leaves little doubt that the Commonwealth, at least, so perceived the sentence imposed:

> [DEFENSE COUNSEL]: Your Honor, I would just ask the Court to note my client has taken advantage of every op-

portunity since he's been incarcerated. He's been working toward his high school diploma.

I would also ask the Court to note that he was not found to be a sexually violent predator. And for those reasons, Your Honor, I would argue that Mr. Coulverson is someone who could get out of prison and do something positive with his life.

[THE COMMONWEALTH]: I believe the Court is well aware of the statements that [the victim] and her husband . . . have made at sentencing, and *I really think that . . . their comments and what they're going through resonated with this Court,* and I don't have anything more to add.

THE COURT: Thank you. I thought the sentence I handed down that day was appropriate. I still think it's appropriate. It puts you under—well, an opportunity for parole. It puts you if you are paroled under the State parole authorities for an extensive period of time.

\* \* \* \*

The conduct is something that we can't condone. What you did was you changed, if not ruined, the life of many people, the victims. When I say victims, there's one victim for our court proceedings; but the family of the victim, your family, everybody involved in this has suffered because of you.

\* \* \* \*

I don't see any reason to change this sentence.

N.T., Post–Sentencing Motion, 12/20/10, at 3–5 (emphasis added). These statements, coupled with the court's unwillingness to engage in a serious discussion with Coulverson's counsel concerning the maximum sentences imposed, (*i.e.,* "You don't like the statutory maximum; but shouldn't you be addressing that to the legislature?), evince the court's determination not to consider any sentence other than a statutory maximum, notwithstanding any factor that might counsel to the contrary.[3]

Indeed, the victim impact statements the Commonwealth referenced each exhort the court to impose the maximum penalty, and if possible to confine Coulverson for the remainder of his life. N.T., 8/11/10, at 23–24 ("[THE VICTIM]: I do not see this prison term as a punishment but rather as a way to remove Terence from society hopefully permanently so that he can never do this to another woman. That's why I'm asking for the maximum amount of time for Terence."); 33 ("[THE VICTIM'S HUSBAND]: I would like the Defendant to be locked in prison for so long that he is never given the opportunity to do this to anyone ever again. If he were to be let out in his youth, he would be given the choice of whether to commit a crime like this again, and there's no way he deserves the right to make that choice."); 37 ("[THE VICTIM'S MOTHER]: I hope that he is never in the position to hurt her again and that he gets the maximum time involved.").

■■■■ Each of these statements reflects the witness's emotional state, which we do not diminish, by any means. Nevertheless, the deliberation of a court of law demands evaluation of multiple considerations that private grief does not. Thus, while a crime's impact on the victim continues to be a significant element of a

---

**3.** This interpretation is similarly supported by the trial court's imposition of a sentence of *double* the statutory maximum on the Robbery charge attendant to Coulverson's theft of $10 from the victim's purse. Although we here vacate that sentence as facially illegal, the fact that the court imposed it with no acknowledgement of the circumstances it was calculated to address strongly suggests "a fixed purpose of keeping Appellant in jail for his life." *Dodge,* 957 A.2d at 1201.

sentencing judge's consideration, the court may not ignore the continuum of circumstances underlying a defendant's criminal conduct, society's need for rehabilitation, or the statutory factors enunciated in our Sentencing Code on the way to imposing a maximum sentence. Nor may it aggregate consecutive sentences merely to achieve extended incarceration if the totality of the sentencing factors involved, *see Walls, supra; Dodge, supra,* has not been considered *and acknowledged.* In this regard, the trial court's consideration here was plainly inadequate, its explanation scant, and the resulting maximum sentence manifestly excessive. *See Dodge,* 957 A.2d at 1202. Although the court acknowledged the PSI report, it did so only as a perfunctory exercise and focused its consideration entirely on the severity of Coulverson's offenses and the victims' impact statements. Its discussion evinced no consideration whatsoever of the dysfunction that marked Coulverson's own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that, with appropriate mental health treatment, he might succeed at rehabilitation after serving a substantial term of eighteen years' incarceration. The resulting sentence cannot be described as "individualized" in any meaningful way. Consequently, notwithstanding the commencement of Coulverson's multiple sentences in the standard guidelines range, we find the maximum sentence imposed "clearly unreasonable." *See Dodge, supra.* We are constrained accordingly to vacate the judgment of sentence, *see* 42 Pa.C.S. § 9781(c)(2), and remand this matter for resentencing in accordance with the precepts of this Opinion.

Judgment of sentence **VACATED.** Case **REMANDED** for re-sentencing. Jurisdiction **RELINQUISHED.**

Judge PLATT files a concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION BY PLATT, J.:

I respectfully concur in part and dissent in part from the opinion of the learned majority.

I agree that the trial court erroneously sentenced Appellant at Count Four (Aggravated Indecent Assault) to an illegal sentence in excess of the statutory maximum, as is now conceded by the trial court itself. I also agree that the trial court, however well-intentioned, lacked authority to impose a stay away order on Appellant as a condition of state parole, (even though he had contacted three of his victims since his arrest). *See Commonwealth v. Mears,* 972 A.2d 1210, 1212 (Pa.Super.2009) (trial court lacks authority to impose condition where any special condition of parole will be under jurisdiction of Pennsylvania Board of Probation and Parole).

However, I disagree with the learned majority's conclusion that the sentence imposed was excessive and clearly unreasonable. (*See* Majority at 139, 150). It is undisputed that all minimum sentences were within the standard range. Rather, the majority takes issue with the maximum sentences, in effect faulting the trial court for disregarding Appellant's troubled background, homelessness and destitution. However, where, as here, the sentencing court had the benefit of a pre-sentence investigation report, we can assume the court was aware of the defendant's character and weighed it along with mitigating statutory factors. *See Commonwealth v. Rhoades,* 8 A.3d 912, 919 (Pa.Super.2010), *appeal denied,* 25 A.3d 328 (Pa.2011).

Appellant was convicted of eighteen offenses, most notably including a brutal rape, as attested to in the impact statements of the victim and her husband, and a separate robbery in which he knocked

the victim to the ground, covered her nose and mouth and told her not to scream because he had an anger management problem. Appellant is not entitled to a "volume discount." *See Commonwealth v. Yeomans,* 24 A.3d 1044, 1050 (Pa.Super.2011).

I would note that under our standard of review, abuse of discretion may not be found unless the trial court's decision is "clearly erroneous." *Commonwealth v. Walls,* 592 Pa. 557, 926 A.2d 957, 961 (2007) (citation omitted). "The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is 'in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.'" *(Id.)* (citations omitted).

Accordingly, except as previously noted, I respectfully dissent.