J-S68039-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TYLER HEAGY, | : | |
| | : | |
| Appellant | : | No.   692 MDA 2017 |

Appeal from the Judgment of Sentence March 13, 2017
in the Court of Common Pleas of Berks County
Criminal Division, at No. CP-06-CR-0005358-2015

BEFORE:  LAZARUS, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 08, 2017**

Tyler Heagy (Appellant) appeals from the judgment of sentence entered on March 13, 2017, following his jury convictions for attempted murder, aggravated assault, two counts of simple assault, and recklessly endangering another person.  Upon review, we vacate the special sentencing condition, and affirm in all other respects.

The trial court summarized the facts underlying Appellant's conviction as follows.

> At about 9:00 PM on September 26, 2015, Austin Myers … drove [Appellant], Kristine Haduck …, and Shamar to Fumo Bar & Lounge … in exchange for money. [Myers] was a work colleague of [Haduck] and Shamar, but did not know Appellant. After dropping his passengers off, he left the [b]ar and returned home.
>
> Several hours later, at around 12:00 AM, Shamar felt unwell and [Haduck] started to look for Appellant so all could return home. Around this time, [Haduck] called Myers to request a ride home. In furtherance of her efforts to find Appellant, [Haduck]

---

* Retired Senior Judge assigned to the Superior Court.

went outside to look and started to talk with a group of smokers. It was clear to the group that [Haduck] was intoxicated at this time. When outside the [b]ar, [Haduck] started to engage in a casual conversation with Alan Santin, one of the smokers. Then Appellant came outside and spotted [Haduck] having this conversation. He became agitated and started to call [Haduck] names. Santin attempted to intervene …, but Appellant forcefully pushed him away and verbally accosted him. Appellant and [Haduck] then went back inside the bar. Santin followed and attempted to intervene. This time Appellant threatened Santin with physical violence and Santin retreated.

Following this interaction, Appellant stormed off and walked down a road. [Haduck] followed Appellant down the road. Once she caught up with Appellant, she informed him that Myers would be arriving soon. With no additional word Appellant stood up and attacked [Haduck]. In the course of the first attack, he ripped at [Haduck's] hair, punched her all over her body, and thrashed her to the ground. [Haduck] beseeched Appellant to stop his assault, but the assault continued until Myers arrived. During this initial assault, [Haduck] sustained many bruises, a broken foot, and bleeding from her scalp.

Once Myers arrived, he asked Appellant what was going on, twice[;] Appellant did not respond. Appellant then reached out his hand, as if to shake Myers' hand[;] instead he punched Myers in the back of his head, causing a headache. Myers then tried to deescalate the situation and it seemed for a bit as [if] Appellant was going to comply. Meanwhile, [Haduck] was attempting to flee. Noticing [Haduck's] retreat, Appellant "bolted" towards [Haduck].

After catching up with [Haduck], Appellant started to wrap his hands around [her] arms to restrain her. [Haduck] asserted that Appellant was hurting her. Appellant then said "[i]f I can't have you, nobody can." He then picked her up and flipped her over a road railing. Upon her landing, he dragged her to the pond, by her ankle, and threw her in[,] back first. Appellant followed her in and laid "full-body flat" on top of her. She could not breathe as this pinned her down and held her head fully underwater. At this point, Myers jumped down and intervened. He grabbed Appellant's left ankle and started to pull and kept doing so until Appellant stood up. Appellant then started to intimidate Myers, but this permitted [Haduck] time to escape.

At the same time, an off-duty bouncer, … who was far larger than Appellant, arrived at the pond. He saw Appellant and [Haduck] in the water and yelled at Appellant to get off her. Appellant let go at this point and [Haduck] was able to escape. Then, mostly due to the bouncer[']s imposing stature, he convinced Appellant to leave [Haduck] be and no further physical confrontations occurred. The police arrived at the scene at about 2:04 AM. They observed that Appellant was wet, shirtless, agitated, and intoxicated. Appellant was then arrested.

Trial Court Opinion, 7/5/2017, at 2-4 (citations omitted).

The Commonwealth filed a pre-trial motion *in limine* to introduce evidence pursuant to Pa.R.E. 404(b). Consequently, the jury heard evidence of the following prior incident.

One late evening in March 2014, Appellant arrived at [Haduck's] apartment intoxicated. He likely observed that another man was in the apartment. This man was the father of one of [Haduck's] children and was there to care for the child, who[m] he was holding at the time. Appellant then started to kick at the door. [Haduck] threatened to call the police and then Appellant kicked in the door. He walked in screaming and asking "what the fuck's going on?" In order to protect her child, [Haduck] stepped between him and the other man. Appellant pushed [her] down and into a bike. Then, he punched the other man in the face. After which, [Haduck] then called the police and Appellant left.

*Id.* at 4 (citations omitted).

Having heard all of this evidence, a jury convicted Appellant of attempted murder, aggravated assault, two counts of simple assault, and recklessly endangering another person on March 1, 2017. Appellant was sentenced to an aggregate term of eight to twenty-two years of imprisonment on March 13, 2017. As part of this sentence, the trial court imposed a special

condition barring Appellant from contact with Haduck and her family, which included Appellant's biological daughter.

Appellant filed a post-sentence motion for a new trial and modification of his sentence, which the trial court denied on March 24, 2017. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents two questions for this Court's consideration.

> A. Whether the trial court erred and abused its discretion in granting the Commonwealth motion *in limine* to introduce evidence pursuant to Pa.R.E. 404(b) regarding a prior bad act by Appellant as it was substantially more prejudicial than probative and more akin to propensity evidence that [*sic*] in establishing a common plan or scheme.
>
> B. Whether the trial court abused its discretion in barring Appellant from contact with his daughter, whom he shares with the victim, as part of a special sentencing condition prohibiting Appellant from contact with the victim or her family.

Appellant's Brief at 7 (unnecessary capitalization and proposed answers omitted).

Appellant's first issue challenges the admission of 404(b) evidence. Specifically, Appellant alleges that the trial court erred in admitting evidence related to the March 2014 incident. The Commonwealth argued that this evidence was admissible because it was part of a common scheme, and as proof of motive, intent, malice, and ill-will toward the victim.

We address this claim mindful of the following.

> The admission or exclusion of evidence is a matter vested in the trial court's sound discretion, and we may reverse the court's

ruling only upon a showing of a clear abuse of that discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law or an exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Our scope of review is limited to an examination of the trial court's stated reason for its decision.

***Commonwealth v. Wattley***, 880 A.2d 682, 685 (Pa. Super. 2005).

Pa.R.E. 404(b) governs the admissibility of evidence of other crimes.

**(b) Other crimes, wrongs, or acts.**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404 (b)(1)-(3). In discussing subsection (b)(2), our Supreme Court permits admission of evidence which demonstrates a defendant's criminal tendencies by way of a common plan, scheme, or design.

[While e]vidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies[, s]uch evidence is admissible … to show a common plan, scheme or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

***Commonwealth v. Robinson***, 864 A.2d 460, 481 (Pa. 2004) (citations

omitted).

> In order for evidence of other criminal activity to be admissible to establish a common scheme, two conditions must be satisfied: (1) the probative value of the evidence must outweigh its potential for prejudice against the defendant, *see* Pa.R.E. 404(b)(3); and (2) a comparison of the crimes must establish a logical connection between them.

***Commonwealth v. Arrington***, 86 A.3d 831, 842 (Pa. 2014) (some citations

and quotation marks omitted).

Here, the trial court stated its reasons for admitting the 404(b)

evidence.

> Instantly, the evidence of Appellant's prior assault against [Haduck] was admissible to show motive, malice, intent and ill-will to commit attempted murder[, as well as a common plan or scheme]. The Commonwealth relied upon the evidence to establish that Appellant had a relationship with [Haduck] that could cascade into violence with no provocation. Further, the evidence was necessary to establish that only alcohol consumption and potential romantic rivals were required for Appellant to become consumed with rage and violently attack [Haduck]. The prior assault was particularly critical because it showed that Appellant would not act rationally in these situations. Instead, he would continue to escalate the situation until a third party intervened. Thus, drawing the inference that Appellant's violent acts could, beyond a reasonable doubt, demonstrate that he had the motive, malice, intent and ill-will to kill [Haduck].
>
> * * *
>
> At trial, the logical connection between Appellant's prior bad act and the instant assault was apparent. First, both assaults were perpetrated against the same victim and arose out of Appellant's feelings of possessive jealousy to that victim when she spoke to other men. Second, each assault started with Appellant being verbally belligerent and would steadily escalate to the point where he physically assaulted [the victim], as well as others, such as

- 6 -

> Myers and Wagner, who could interfere. Third, intoxication played a significant role in both assaults, which demonstrated an enhanced inclination to control [the victim], his [intimate] partner, through harassment, violence, and intimidation. … Given the relationship between the two crimes this evidence falls well within the purview of 404(b)(2).
>
> Furthermore, in deciding admissibility of other acts, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact. Instantly, this evidence, while prejudicial, is highly probative because the Commonwealth relied upon circumstantial evidence to demonstrate intent to kill.

Trial Court Opinion, 7/5/2017, at 9-10 (internal citations and quotation marks omitted).

We agree with the trial court's reasoning and analysis that the evidence of Appellant's prior assault was properly admitted to show motive, malice, intent, and ill-will, and as part of a common plan or scheme. *See Arrington*, 86 A.3d at 844 (holding evidence of defendant's prior acts in past relationships was admissible to establish a common plan or scheme under Pa.R.E. 404(b)(2), where in each instance Arrington "(1) monitored his girlfriend's daily activities; (2) resorted to violence when his partner wanted to end a relationship or interacted with other men; (3) inflicted head or neck injuries with his fist, a handgun, or an edged weapon; and (4) harmed or threatened to harm members of his girlfriend's family or male acquaintances that he viewed as romantic rivals"). The probative value of this evidence outweighed

its potential for prejudice against Appellant, and the trial court did not abuse its discretion in admitting it.[1]

Finally, Appellant argues that the trial court abused its discretion in imposing a special sentencing condition prohibiting Appellant from contact with Haduck's family members, including Appellant's biological daughter. While Appellant presents this claim as a challenge to the discretionary aspects of his sentence, Appellant's issue challenges the legality of his sentence. ***Commonwealth v. Coulverson***, 34 A.3d 135, 143 n.1 (Pa. Super. 2011) (holding where "claims raise the facial illegality of the sentence imposed, they are not subject to the reach of Rule 2119 in any event and are entitled to review as a matter of right").

Both the trial court and the Commonwealth concede that the trial court lacked authority to impose the special condition, and that this portion of Appellant's sentence is illegal. The condition prohibiting Appellant from contact with his daughter was imposed as part of Appellant's period of

---

[1] Appellant alleges in his brief that a limiting instruction was not provided, but only mentions this when arguing that the admission of the 404(b) evidence could not be considered harmless error. Appellant's Brief at 30. We note that the trial transcript does not include the trial court's opening or closing instructions to the jury, and thus this Court is unable to verify whether the trial court provided a limiting instruction regarding the 404(b) evidence. ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006) (holding that when an appellant "fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review"). However, because we find that the trial court did not err in admitting the 404(b) evidence, we need not reach Appellant's harmless error sub-argument.

incarceration, and was to be applied to any future parole. However, the Pennsylvania Board of Probation and Parole has exclusive authority in determining conditions of parole for individuals sentenced to more than two years of incarceration. 61 Pa.C.S. § 6132; *Coulverson*, 34 A.3d at 141-142. As noted above, Appellant was sentenced to an aggregate term of eight to twenty-two years of imprisonment. Thus, any condition the trial court attempted to impose on Appellant's state parole was advisory only. *Commonwealth v. Mears*, 972 A.2d 1210, 1212 (Pa. Super. 2009).

Because the trial court lacked authority to impose a condition on Appellant's parole, the special condition barring Appellant from contact with his daughter is without legal force and is vacated. *Id.*; *Coulverson*, 34 A.3d at 142. We agree with the trial court that remand is unnecessary as the removal of this condition does not impact the sentencing scheme.

Judgment of sentence vacated as to the special condition imposed. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/10/2017