J-S58016-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SHAQUILLE DUGAN | : | |
| Appellant | : | No. 154 WDA 2018 |

Appeal from the Judgment of Sentence January 3, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006965-2016

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.: FILED OCTOBER 09, 2018

Shaquille Dugan (Appellant) appeals from the judgment of sentence imposed after he pled guilty to robbery[1] and related offenses. Appellant challenges the discretionary aspects of his mitigated-range sentence. Upon review, we affirm.

On October 10, 2017, Appellant entered an open guilty plea to two counts of robbery, two counts of theft by unlawful taking,[2] and one count of conspiracy.[3] Appellant admitted that on May 10, 2016, while employed as a manager at an Auntie Anne's store at Ross Park Mall, he stole money from the

_____

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] 18 Pa.C.S.A. § 3921(a).

[3] 18 Pa.C.S.A. § 903(a).

store's safe, cut the wires on the security cameras, and placed the security monitor in the store's dryer. N.T. Guilty Plea, 10/10/17, at 9. Appellant told police that he was upset because the store's "management was writing him up and demoting him, and not promoting him." Id. The store terminated Appellant's employment. On May 25, 2016, 15 days after the incident, Appellant appeared at the store again, this time accompanied by a man who Appellant referred to as "Midnight." N.T. Sentencing, 1/3/18, at 10. Midnight displayed a gun and ordered two employees to open the safe. Although Appellant covered his face, the employees recognized him and asked why he was "doing this." Id. at 15. Appellant responded, "Yes, this is serious. Yes this happening." Id. Midnight took approximately $850 and a cellphone from one of the employees before he and Appellant fled. Midnight subsequently gave Appellant $100. Id. at 33. Midnight was not apprehended. Id. at 29.

On January 3, 2018, the trial court, after reviewing a pre-sentence investigation report, conducted a sentencing hearing. Defense counsel discussed at length Appellant's "incredibly difficult young childhood" — e.g., his mother was a drug addict, Appellant's birth father was "not involved in [his] life at all," Appellant lived "with a variety of crack addicts in the house," was given drugs before he was 10 years old, and his stepfather beat and assaulted him. Id. a 6-7. In his teenage years, Appellant "was committed because of a threat of suicide." Id. at 8. When he was 15 years old, "one of his only family members that was loving to him, his grandmother, died," and

- 2 -

distraught, Appellant committed arson. Appellant was charged as an adult, pled guilty, and served 2½ years of imprisonment; he also pled guilty to another charge of arson. Id. at 8-9, 15.

Defense counsel acknowledged Appellant's commission of Auntie Anne's robbery, but argued that he "was not the mastermind." Id. at 14-15. Counsel argued that due to Appellant's background, "when he is offered companionship [or] a positive response . . . , especially someone who he likes, he is highly suggestible." Id. at 10. Counsel also averred that Appellant, who was not RRRI eligible,[4] had been making progress with mental health treatment with Mercy Behavioral Health, and had obtained a new job. Id. at 12.

Appellant addressed the court, stating that he did not personally know Midnight, but merely knew his reputation as a drug addict. Id. at 32. Appellant explained that he agreed to give Midnight a jitney ride to Ross Park Mall, but when they arrived, Midnight brandished a gun and told Appellant that Midnight would rob the Auntie Anne's store. Id. at 30-31. Appellant initially told Midnight that he did not want to get involved — and at sentencing Appellant acknowledged that Midnight did not force him with a gun — but nevertheless, Midnight told Appellant "that [he] had to go in." Id. at 31, 35. Appellant went into the store alone, returned to the car, and reported to Midnight that there were two or three people inside. Id. at 31. Finally,

_____

[4] Recidivism Risk Reduction Incentive, 61 Pa.C.S.A. §§ 4501-4512.

Appellant stated that he has two children, had a good relationship with his girlfriend, and "believe[d] that [he could] do better." Id. at 35-36.

The Commonwealth acknowledged Appellant's "deplorable" childhood, but noted that Appellant "really did not assist officers in obtaining information about his accomplice Midnight." Id. at 31. The Commonwealth requested a sentence of 5 to 10 years plus probation. Id. at 44.

The trial court found Appellant's explanation about Midnight incredible: "In light of everything, I have a very hard time believing that it was coincidence that somebody randomly on the street decided to hitch a ride with [Appellant] to the mall and then somehow coerced him into engaging in escalated behavior from what he had engaged in admittedly a week or so earlier." Id. at 45. For Appellant's two robbery counts, graded as felonies of the first degree, the trial court imposed sentences in the mitigated range: (1) 40 to 100 months' imprisonment (3 years and 4 months to 8 years and 4 months); and (2) a consecutive 5 years' probation. On the conspiracy count, also graded as a felony of the first degree, the trial court sentenced Appellant to 5 years' probation, to run concurrently with the first probationary term. The trial court did not impose any further penalty on the two theft by unlawful taking counts, which were graded as misdemeanors of the first degree. The trial court sentenced Appellant to an aggregate 3 years and 4 months to 8 years and 4 months' imprisonment and a consecutive 5 years' probation.

Appellant filed a timely post-sentence motion. The trial court denied the

motion, and Appellant took this timely appeal. Both the trial court and Appellant have complied with Pa.R.A.P. 1925(b).

On appeal, Appellant presents two related issues for our review:

1. Did the Trial Court abuse its discretion imposing an excessive term of incarceration that failed to adequately address [Appellant's] need for rehabilitation in connection with his mental health issues?

2. Whether the Trial Court abused its discretion when it focused solely on the seriousness of the offense and failed to adequately address [Appellant's] limited involvement in the crime alleged and the absence of a need to protect the community?

Appellant's Brief at 5.

Appellant's two issues pertain to the discretionary aspects of his sentence. Such a challenge:

is not appealable as a matter of right, but is only subject to review if the following four-part test is met:

(1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

Commonwealth v. Baker, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "The determination of whether a particular issue poses a substantial question is to be made on a case-by-case basis." Commonwealth v. Coulverson, 34 A.3d 135, 142 (Pa. Super. 2011). A claim that the trial court failed to consider the defendant's rehabilitative needs, alone, generally does not raise a substantial question. Commonwealth v. Griffin, 65 A.3d 932,

936-937 (Pa. Super. 2013). However, this Court has held that a substantial question has been presented when an appellant claimed that a "sentence takes no account of his rehabilitative needs and is disproportionate to the circumstances when adjudged as a whole." Coulverson, 34 A.3d at 143 (emphasis added).

> This Court has stated:
>
> We review a trial court's sentencing determination for abuse of discretion. Sentencing in Pennsylvania is individualized, and requires the trial court to fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[.]" 42 Pa.C.S.A. § 9721(b). The trial court must also consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing. Id.

Baker, 72 A.3d at 662-663 (some citations omitted). "When a sentencing court has reviewed a presentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." Id. at 663.

In his first issue, Appellant avers that the trial court imposed an excessive sentence and failed to address his mental health issues and rehabilitative needs. He reasons that for the first time in his life, he had the support and resources to address his mental health issues, and the court failed to adequately address the harm he would suffer from being removed from them. Appellant also contends his sentence is excessive in light of his "limited role in the [r]obbery," and emphasizes that he apologized for his actions. Id.

at 22, 25. Finally, Appellant avers that the "extensive period of incarceration . . . will not serve [his] rehabilitative needs any more than his prior incarceration" and "would do nothing to avoid the danger to the community." Id. at 22.

In Appellant's second issue, he alleges that the trial court improperly focused solely on the seriousness of the offenses, and overlooked his "limited role in the crime and failed to consider the absence of a need to protect the community." Id. at 26. Appellant reiterates that he accepted responsibility for his role in the robbery and that he did not have a violent character, but rather, his crimes stemmed from emotional and mental health problems.

Instantly, Appellant has complied with the first three prongs of the discretionary aspect test to invoke our jurisdiction. See Baker, 72 A.3d at 662. Furthermore, his two related arguments — that the trial court improperly considered only the seriousness of the crimes to the exclusion of his mental health issues and rehabilitative needs — raises a substantial question. See Coulverson, 34 A.3d at 142. Thus, we consider the merits of his claims.

In its opinion, the trial court reasoned:

At the January 3, 2018 sentencing hearing, this Court considered the pre-sentence report, the [statutory] factors, as well as the totality of information presented to fashion an individualized sentence. [N.T. Sentencing, 1/3/18, at 2.] Although Appellant purports to have taken responsibility, at the sentencing hearing he argued that by mere coincidence, an individual who was little more than a stranger to him convinced him to go to the mall and engage in escalated criminal behavior from that which he admittedly engaged in only a week before. [Id. at 30-32.] This Court acknowledges that Appellant suffered a traumatic childhood

but must also balance Appellant's need for ongoing treatment with the community's need to be protected from Appellant's escalating criminal behavior.

Trial Court Opinion, 4/20/18, at 4-5 (footnote omitted).

We presume that the trial court properly considered and weighed all relevant factors in Appellant's presentence investigation report. See Baker, 72 A.3d at 662-663. Contrary to Appellant's suggestion, it is evident from the record that the trial court considered Appellant's traumatic childhood and mental health issues. Furthermore, Appellant's insistence that he played a "limited" role in the robbery and accepted full responsibility for his actions is contrary to the trial court's factual findings. Finally, we note that the trial court imposed mitigated-range sentences on all three of Appellant's first-degree felony counts, resulting in an aggregate sentence that was 1 year and 8 months less than what the Commonwealth requested. Two of these sentences were probationary and ordered to run concurrently. To the extent Appellant argues that a lengthy sentence in this case was inappropriate because his past incarceration proved ineffective, see Appellant's Brief at 22 ("The extensive period of incarceration here will not serve [Appellant's] rehabilitative needs any more than his prior incarceration did[.]"), a defendant's rehabilitative needs are not the decisive or sole factor in fashioning a sentence. Instead, the trial court properly weighed "Appellant's need for ongoing treatment with the community's need to be protected from [his] escalating criminal behavior." See Trial Court Opinion, 4/20/18, at 5

(footnote omitted). For these reasons, we find no merit to Appellant's claim that the trial court abused its discretion or that his sentence was excessive.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2018