J-S76006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN WADE, | |
| Appellant | No. 1841 WDA 2017 |

Appeal from the Judgment of Sentence Entered June 5, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005051-2016

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED  MARCH** 05**, 2019**

Appellant, Brian Wade, appeals from the judgment of sentence of an aggregate term of 25-50 years' incarceration, imposed after a jury found him guilty of rape of a child and related offenses.  Appellant challenges the weight of the evidence supporting his conviction and the discretionary aspects of his sentence.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

[T]he evidence presented at trial established that in the summer of 2015, [Appellant] returned to live with his parents at their home on Sidney Street in the South Side of Pittsburgh after many years of living apart from them.[9]  He began to spend time with his half[-]sister, [Mother], who lived nearby on Mary Street in the South Side and her family, although [Mother]'s then-10 year old daughter, [Victim], was not permitted to be alone with [Appellant].  Nevertheless, [Appellant] began to pay special attention to [Victim], calling her "sweetheart" and "baby" and hugging and touching her in a sexual manner even when others were around.

In the late evening hours of July 12, 2015, [Victim] had returned from dinner at Red Lobster and a trip to Wal-Mart with [Mother], [Mother]'s boyfriend, Eugene[,] and her brother[,] and was playing on the computer in the family room while the rest of the family was upstairs. She heard a tapping on the window and saw [Appellant] outside. [Victim] and [Appellant] sat on the front porch and talked, then [Appellant] suggested that they go swimming in [Victim]'s above-ground swimming pool. [Appellant] swam in his boxer shorts and [Victim swam] in her clothes. After their swim, at approximately 2:00 a.m., [Appellant] took [Victim] to her grandmother's house by walking her down Carson Street and taking a brief detour into Cupka's bar to greet a cousin who worked there as a bartender. When they arrived at her grandmother's house, the two sat on the front porch and talked. [Appellant] asked [Victim] if she knew how to [F]rench kiss and when she replied "yes[,]" he told her to prove it. The two kissed several times and then went into the house and had sexual intercourse on the couch in the family room.

> [9] [Appellant] had been incarcerated for a term of 15 to 30 years for … prior convictions of [r]ape, [k]idnapping, [i]nvoluntary [d]eviate [s]exual [i]ntercourse, [s]exual [a]ssault, [a]ggravated indecent [a]ssault, [i]ndecent [a]ssault and [t]erroristic [t]hreats, though the jury was not told of the prior convictions.

Before leaving the house the night before, [Victim] had left her mother a note, which her mother found at approximately 6 a.m. [Mother] went to the house where she woke [Victim] by screaming, hitting her and pulling her hair. She then forbade [Appellant] to come to her house or spend time with [Victim]. Nevertheless, [Victim] continued to visit her grandmother's house (and would frequently stay the night) throughout the summer and into the fall and winter and would see [Appellant] there. When she spent the night, she and [Appellant] would have sexual intercourse in the family room after everyone else went to bed, which occurred a total of 15 times. [Victim] and [Appellant] would exchange text messages, which were seen by some of her friends, though she immediately deleted them to prevent her mother from seeing.

The episodes of intercourse continued until March, 2016, when [Victim] told several school classmates that she was having sex with her uncle. One classmate told her mother, who then told the teacher and the school eventually contacted [Victim]'s father, who

did not live with [her]. After being confronted by her mother, [Victim] admitted [to] having sexual intercourse with her uncle, [Appellant].

Trial Court Opinion (TCO), 4/26/18, at 2-3.

Police subsequently arrested Appellant, and the Commonwealth ultimately charged him with rape of a child, 18 Pa.C.S. § 3121(c); unlawful contact with a minor (UCWM), 18 Pa.C.S. § 6318(a)(1); sexual assault, 18 Pa.C.S. § 3124.1; interference with the custody of children, 18 Pa.C.S. § 2904(a); indecent assault, 18 Pa.C.S. § 3126(a)(7); corruption of minors, 18 Pa.C.S. § 6301(a)(1)(ii); and indecent exposure, 18 Pa.C.S. § 3127(a).[1] A trial was held on March 20-27, 2017, after which the jury convicted Appellant on all counts. On June 5, 2017, the trial court sentenced Appellant to 20-40 years' incarceration for rape of a child, and to a consecutive term of 5-10 years' incarceration for UCWM. No further penalties were assessed at the remaining counts. The trial court denied Appellant's timely post-sentence motion on June 22, 2017. Appellant then filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on April 26, 2018.

Appellant now presents the following questions for our review:

I. Did the lower court err in denying the motion for a new trial because the verdict was contrary to the weight of the evidence provided? Specifically, when the trial testimony from the alleged victim in a case is vague, uncorroborated, riddled with contradictions, and was proven false with respect to [V]ictim's alleged dates of sexual intercourse,

_____

[1] Other charges initially filed in this case were withdrawn or *nolle prossed* prior to the jury's deliberations.

- 3 -

should [V]ictim's testimony have been wholly rejected by the jury?

II. Did the [trial] court err in imposing a manifestly excessive sentence, which is an abuse of the court's discretion, in that … Appellant was ordered to serve 25 to 50 years of incarceration, meaning he will be under court supervision until … Appellant is 88 years old, and there are inadequate reasons on the record for a *de facto* life sentence? Moreover, did the sentencing court err in failing to consider all factors under Section 9721(b) of the Sentencing Code, as it must, including not just the severity of the crime and the impact on the victim, but also the character of the defendant and his need for rehabilitation?

Appellant's Brief at 10.

Appellant first presents a weight-of-the-evidence claim. We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

- 4 -

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Instantly, Appellant points to many inconsistencies in Victim's testimony to support his claim that the trial court abused its discretion by failing to find that the verdict was against the weight of the evidence. Appellant first argues that it was "implausible and contrary to common experience" that Victim, despite being a virgin at the time, neither bled nor felt pain during the first time she had sex with Appellant, despite her additional claim that the act "lasted for fifteen minutes." Appellant's Brief at 40. However, this assertion was directly contradicted by the testimony of Dr. Jennifer Clarke, a child abuse pediatrician at Children's Hospital. Dr. Clarke, when asked by the prosecutor "whether or not a woman necessarily bleeds when she is penetrated for the first time or whether or not she experiences any pain[,]" responded, "I think people can have variety of experiences that can range from no to little pain or no to little bleeding to … a report of excruciating pain to tons of bleeding. It just depends." N.T. Trial, 3/20/17-3/27/17, 147-48. Thus, it is certainly

plausible that Victim did not experience bleeding or pain when Appellant first penetrated her, regardless of what Appellant considers 'common experience.'

The next discrepancy raised by Appellant is "whether Victim and [Appellant] discussed French kissing prior to their first sexual experience … at [Victim]'s house by the pool or on the porch at her grandmother's house." Appellant's Brief at 41. Victim testified at trial that she had a conversation with Appellant about French kissing on her grandmother's porch. N.T. Trial at 65. Later, she was challenged by defense counsel during cross-examination regarding whether she had initially told police that the conversation had instead occurred near the pool at her own home. *Id.* at 104-05. Victim testified that she did not recall telling that to police, and that she was surprised that it was in the police report. *Id.* at 105. This discrepancy, regarding the precise location of a brief conversation as recalled by the 12-year-old victim nearly two years after it had occurred, appears trivial on its face. Notably, Victim recalled virtually every other aspect of that conversation, which, in any event, did not specifically relate to any of the charged offenses.

Appellant next complains that Victim's testimony was inconsistent with regard to the number of times she had sex with Appellant. At trial, she stated that she had sex with Appellant 15 times, whereas she had suggested it was 13 times at the preliminary hearing. Appellant's Brief at 41. Furthermore, during the forensic interview conducted at Children's Hospital, Victim claimed she had sex with Appellant twice on the first night, but she only "discussed one sexual encounter" at trial. *Id.*

Again, this Court finds the discrepancies raised by Appellant to be minor in the full context of this case. Appellant was not charged with having sex with Victim on 15 or even 13 occasions. Instead, the charges were focused only on the sexual interactions that occurred on July 12, 2015. In any event, these discrepancies were brought to the jury's attention through defense counsel's cross-examination of Victim, N.T. Trial at 92-121, and then thoroughly discussed by defense counsel during his closing argument, *id.* at 278-95. Thus, the jury was fully aware of the inconsistencies in Victim's testimony; nevertheless, the jury chose to believe Victim.

Appellant also contends that the testimony of Brandie Recker, the cousin who worked at Cupka's Bar, contradicted Victim's statement that Appellant and Victim visited Recker on July 12, 2015. At trial, Recker testified that she never saw Appellant and Victim that evening. However, Recker's statement at trial directly contradicted a statement she gave to police. *See* N.T. Trial at 130. When confronted with this fact, Recker stated that she did not recall what she had told the officer merely one week prior. *Id.* Thus, it is obvious that Recker's credibility was in no better state than Victim's and, therefore, was yet another matter for the jury to resolve.

Appellant raises several other minor discrepancies as well, however, we disagree that the jury's guilty verdict should have shocked the conscience of the trial court given these discrepancies, considered individually or collectively. After a thorough review of the record, we ascertain no abuse of

discretion in the trial court's decision to deny Appellant's post-sentence, weight-of-the-evidence claim.

Next, Appellant asserts that the trial court abused its discretion when crafting his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra** at 912-13.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. **Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa. Super.

2006). An appellant must articulate the reasons the sentencing court's actions violated the sentencing code. *Id.*

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

Here, Appellant filed a timely notice of appeal, preserved his discretionary-aspects-of-sentencing claim in a timely-filed post-sentence motion, and supplied this Court with a Rule 2119(f) statement in his brief. Thus, we now consider whether Appellant presents a substantial question for our review.

Appellant argues that his sentence is manifestly unreasonable, such that it constitutes too severe a punishment, even though his sentence fell within the statutory limits. Such a claim, when adequately supported, has been held by our Supreme Court to constitute a substantial question for review. ***See Commonwealth v. Mouzon***, 812 A.2d 617, 627-28 (Pa. 2002).[2] Furthermore, Appellant also argues that the trial court failed to offer specific reasons as to how the imposed sentence for rape of a child "comports with the considerations required in 42 Pa.C.S. § 9721(b)[,]" where the court imposed the statutory maximum for that offense. Appellant's Brief at 49. This claim also constitutes a substantial question for our review. ***See Mouzon***, 812 A.2d at 627. Accordingly, we now turn to assess the merit of Appellant's sentencing claims.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal

---

[2] However, "bald allegations of excessiveness" do not constitute substantial questions. *Id.* at 627. Here, Appellant has provided *at least* something more than a bald assertion that his sentence was excessive.

absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Hoch*, 936 A.2d 515, 517–18 (Pa. Super. 2007) (citation omitted).

Here, Appellant was sentenced within the standard range of the sentencing guidelines for rape of a child, and in the mitigated range of the guidelines for UCWM. In the circumstances of this case, the standard sentencing range for Appellant's rape of a child conviction extended to the statutory maximum for that offense—20-40 years' incarceration—which is precisely the term of years imposed by the trial court. In addition, the court imposed a consecutive term of 5-10 years' incarceration for UCWM.

Appellant complains that the trial court's reasons for imposing the statutory maximum sentence for rape of a child were inadequate. Appellant concedes that the trial court offered the following reasoning at sentencing:

> Okay. Mr. Wade, I've read your Pre-Sentence Report and would note for the record that you really haven't done very much in your life probably because you were incarcerated for a term of not less than 15 nor more than 30 years[' incarceration] for a prior rape. This then would make you a rapist for the second time.
>
> In this case the victim was ten years old. You had an enormous impact on her life. She started to believe that this was a romantic relationship, not realizing that she was the child and you were the adult. You had sex with her multiple times.

- 10 -

N.T. Sentencing, 6/5/17, at 10. Appellant also concedes that the trial court had the benefit of a pre-sentence investigation report (PSI). Appellant's Brief at 55.

Essentially, Appellant argues that the trial court imposed the sentence "with an intense focus on the impact of the crime on the victim" and on Appellant's criminal history, which are both factors ostensibly accounted for in the sentencing guidelines through the calculation of Appellant's offense gravity score and his prior record score. Id. at 57-58. However, Appellant complains, "[n]o mention is made of [Appellant]'s educational history, mental health, family history, or need[] for rehabilitation." *Id.* at 58.

We ascertain no abuse of discretion in the imposed sentence. As our Supreme Court has held:

> Where [a PSI] exist[s], we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the PSI, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Here, it is conceded that the trial court had the benefit of a PSI, and the court indicated at sentencing that it "ordered, read, and considered [the PSI] prepared [o]n

[Appellant]'s behalf." N.T. Sentencing at 2. Appellant did not object to the contents of the PSI at sentencing or in a post-sentence motion.

Moreover, although Appellant argues that the court failed to consider his "educational history, mental health, family history, or need[] for rehabilitation[,]" he fails to color this claim with any degree of specificity. Appellant's Brief at 58. As such, we may as well assume that none of those factors substantially counter-balance the gravity of Appellant's crimes in the context of his prior criminal record of sexual offenses, at least insofar as would be required to successfully challenge the discretion of the trial court at sentencing.

Finally, Appellant likens this matter to **Commonwealth v. Coulverson**, 34 A.3d 135 (Pa. Super. 2011). In that case, this Court determined that the trial court had abused its discretion by imposing an aggregate sentence of 18-90 years' incarceration, essentially assuring that Coulverson would be subject to state supervision for the remainder of his life, where the trial court had essentially ignored mitigating factors, despite having the benefit of a PSI. In that case, the trial court had "focused its consideration entirely on the severity of Coulverson's offenses and the victims' impact statements." *Id.* at 150. However, there was substantial mitigating evidence, such as "the dysfunction that marked Coulverson's own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, [and] the possibility that … he might succeed at rehabilitation…." *Id.*

Here, however, Appellant has not expressed remorse (as he continued to deny his culpability at the time of sentencing). *See* N.T. Sentencing at 3. Appellant was nearly twice as old as Coulverson was at the time of their respective crimes. *See* N.T. Trial at 29; *Coulverson*, 34 A.3d at 140. Appellant had a prior conviction for rape, whereas Coulverson had no prior record whatsoever. *Coulverson*, 34 A.3d at 143. Appellant has provided no evidence regarding his potential for rehabilitation; indeed, as noted above, Appellant has only provided this Court with a boilerplate argument that the trial court failed to consider mitigating factors, whereas the mitigation evidence before us in *Coulverson* was detailed and extensive. Accordingly, we conclude that *Coulverson* does not control in this case. Thus, for all of the above-stated reasons, we ascertain no abuse of discretion in Appellant's sentence.

Judgment of Sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/2019

- 13 -