J-S13009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH GARNER | : | |
| | : | |
| Appellant | : | No. 1743 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 14, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003958-2019,
CP-51-CR-0003959-2019, CP-51-CR-0003960-2019,
CP-51-CR-0003961-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH GARNER | : | |
| | : | |
| Appellant | : | No. 1744 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 14, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003958-2019,
CP-51-CR-0003959-2019, CP-51-CR-0003960-2019,
CP-51-CR-0003961-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH GARNER | : | |
| | : | |
| Appellant | : | No. 1745 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 14, 2020

In the Court of Common Pleas of Philadelphia County Criminal Division at No(s): CP-51-CR-0003958-2019, CP-51-CR-0003959-2019, CP-51-CR-0003960-2019, CP-51-CR-0003961-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH GARNER | : | |
| | : | |
| Appellant | : | No. 1746 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 14, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at No(s): CP-51-CR-0003958-2019, CP-51-CR-0003959-2019, CP-51-CR-0003960-2019, CP-51-CR-0003961-2019

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.: **FILED SEPTEMBER 20, 2021**

Appellant, Keith Garner, appeals from the judgment of sentence entered on August 14, 2020, as made final by the denial of Appellant's post-sentence motions on August 27, 2020. We affirm.

In 2018, the Commonwealth charged Appellant with multiple crimes, including four counts of murder. On February 14, 2020, Appellant entered an open guilty plea to four counts of third-degree murder, two counts of robbery,

---

[*] Retired Senior Judge assigned to the Superior Court.

and one count each of conspiracy and possessing a firearm by a prohibited person.[1]  During the plea colloquy, Appellant stipulated to the following facts:

> [O]n Monday, November 19, 2018, at approximately 12:03 p.m.[,] Philadelphia Police responded to [a particular address on Malcolm Street] where they located four deceased individuals lying on the basement floor.  [Tiyaniah Hopkins], a 20-year-old female was found with a gunshot wound to the head.  [Yaleah Hall], a 17-year-old female was also found with a gunshot to the head.  [Akeen Mattox], a 28-year-old male also found with a gunshot wound to the head. And Maurice Taylor-Williams . . . , a 31-year-old man was found partially clothed with a gunshot wound to his right ear, right neck and anterior chest.
>
> All four bodies were taken into the office of the medical examiner for postmortem examinations conducted by Dr. Albert Chu.  He determined that the cause of death for Ms. Hopkins, Ms. Hall and Mr. Mattox were gunshot wounds to the head and the manner of death was homicide.  For Taylor-Williams, the cause of death was multiple gunshot wounds, also [the] manner of death being a homicide.
>
> . . . [Steven Baxley] would testify that[,] on the previous day, . . . he was at [the Malcolm Street residence] with the four deceased individuals.  Mr. Baxley had been called there by his friend Akeen Mattox, because Mr. Mattox and the decedent Taylor-Williams had set up a drug transaction with a person who was known to them, later identified as co-defendant Jalil Porter.  Mr. Porter was at [the Malcolm Street residence] for a period of time with Mr. Baxley and the other individuals.  He received a call that his buyer had car trouble and couldn't make it.  This would later turn out to be a ruse.  Mr. Porter then left and was expected to return.
>
> Mr. Baxley waited with decedents Mattox, Taylor-Williams, and the female victims until around 10:00 p.m. but left prior to Mr. Porter returning.  Shortly after Baxley left, he received

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 3701(a)(1)(i), 903, and 6105(a)(1), respectively.

a phone call from Akeen Mattox stating the buyer had arrived. Mr. Baxley never heard from Mr. Mattox again. Search warrants into the cell phone records and physical cell phones of co-defendants Porter [and] Long revealed that they traveled to the area of [] Malcolm Street together, the first time Porter went to [the Malcolm Street residence].

Jalaya Murphy . . . would be called to testify at trial. She would have testified [that] at the time of the incident she was [Appellant's] girlfriend. On the night of the murders, she received a text from [Appellant] stating that they were going to handle Will, which is victim Maurice Taylor-William's nickname. [Appellant] texted her a picture of the revolver. Earlier in the day, [Appellant] told Ms. Murphy he was going out with co-defendant Jalil Porter.

Around 11:00 p.m., [Appellant] and co-defendant[s] Long and Porter returned to the area of [] Malcolm Street together. All three went inside the [residence] and ordered Hopkins, Hall, Mattox, [and] Taylor-Williams to the basement at gunpoint. Decedent Taylor-Williams was ordered to take off his clothing, then all four were shot by [Appellant] and Porter. [Specifically, Appellant] shot Mr. Taylor-Williams, and Mr. Porter shot Maurice Taylor-Williams and the other three victims.

[Following the murders, Appellant, Long, and Porter] went . . . to [Appellant's] home where they split the drugs that were the subject of the robbery. And those drugs were a mixture of heroin and what turned out to be a cutting agent. . . .

Keith Moore would also be called to testify. He would testify that [Appellant] gave him a revolver which was later recovered by police, and this revolver that Mr. Moore had when [Appellant] gave it to him, he told Mr. Moore to get rid of it. But Mr. Moore did not. The firearm was inconclusive when compared to the body bullet inside of decedent Taylor's chest, but it was capable of shooting the same type of ammunition.

After the murders, co-defendant Porter introduced [Appellant] to [Nasir Moss-Robertson. Appellant] gave Mr. Moss-Robertson some of the drugs that were taken during this incident and asked him to sell them.

N.T. Guilty Plea Hearing, 2/14/20, at 46-50 (some capitalization omitted).

The trial court accepted Appellant's open guilty plea and, on August 14, 2020, the trial court sentenced Appellant to serve an aggregate term of 40 to 80 years in prison for his convictions. In particular, the trial court sentenced Appellant to serve a term of ten to 20 years in prison for murdering Mr. Taylor-Williams, a consecutive term of ten to 20 years in prison for murdering Ms. Hopkins, a consecutive term of ten to 20 years in prison for murdering Mr. Mattox, and a consecutive term of ten to 20 years in prison for murdering Ms. Hall.[2] N.T. Sentencing Hearing, 8/14/20, at 176-177.

Appellant filed timely post-sentence motions at the four docket numbers and claimed that the trial court abused its discretion at sentencing because the trial court: 1) provided insufficient reasons for Appellant's sentence; 2) "failed to give careful consideration to all relevant factors;" 3) "weighed too heavily the text messages between [Appellant] and a co-defendant;" 4) "failed to give enough consideration and weight to the remorse and shame expressed by" Appellant; 5) "failed to give enough consideration and weight to the honesty and forthrightness of [Appellant's] allocution;" and, 6) "gave too much weight to the nature of the offense." Appellant's Post-Sentence Motion, 8/20/20, at 3-4 (some capitalization omitted). Appellant also observed that he was 35 years old at the time of his February 14, 2020 sentencing. He

---

[2] The trial court imposed concurrent terms of imprisonment or no further penalty on Appellant's remaining convictions.

noted that, since he was arrested on December 18, 2018, he would not be eligible for parole until he reaches the age of 74 – which, Appellant claims, exceeds his adjusted life expectancy of 72.2 years. *Id.* at 5. According to Appellant, given these facts, his sentence is manifestly excessive, as his "minimum sentence is past the date of his life expectancy and he has no real possibility of being released prior to his death." *Id.*

The trial court denied Appellant's post-sentence motions and Appellant filed timely notices of appeal at all four docket numbers. Appellant raises one claim in this consolidated appeal:[3]

> Did the trial court commit an abuse of discretion in the sentence it imposed?

Appellant's Brief at 4 (some capitalization omitted).

Appellant's claim on appeal challenges the discretionary aspects of his sentence. "[S]entencing is a matter vested in the sound discretion of the sentencing judge, whose judgment will not be disturbed absent an abuse of discretion." *Commonwealth v. Ritchey*, 779 A.2d 1183, 1185 (Pa. Super. 2001). Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to appeal the discretionary aspects of his sentence. *Id.*

As this Court explained:

---

[3] On December 2, 2020, this Court *sua sponte* consolidated Appellant's four appeals. *See* Order, 12/2/20, at 1; *see also* Pa.R.A.P. 513.

[t]o reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [42 Pa.C.S.A.] § 9781(b).

**Commonwealth v. Cook**, 941 A.2d 7, 11 (Pa. Super. 2007).

Generally, to raise a substantial question, an appellant must "advance a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. McKiel**, 629 A.2d 1012, 1013 (Pa. Super. 1993); **Commonwealth v. Goggins**, 748 A.2d 721, 726 (Pa. Super. 2000) (*en banc*), *appeal denied*, 759 A.2d 920 (Pa. 2000). Additionally, in determining whether an appellant has raised a substantial question, we must limit our review to Appellant's Rule 2119(f) statement. **Goggins**, 748 A.2d at 726. This limitation ensures that our inquiry remains "focus[ed] on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id.** at 727 (emphasis omitted).

Appellant recognizes that each of his individual sentences fall far below the standard sentencing range.[4] **See** Appellant's Brief at 19 n.3.

_____

[4] As the trial court explained to Appellant during the sentencing hearing:
*(Footnote Continued Next Page)*

- 7 -

Nevertheless, Appellant claims that his aggregate sentence of 40 to 80 years is manifestly excessive, as the sentence "essentially guarantees [Appellant] will spend most of the rest of his life in prison." Appellant's Brief at 25. Further, Appellant claims that the trial court abused its discretion at sentencing because the trial court: "focus[ed] solely on the seriousness of the offense [] in crafting [the] sentence;" failed to consider mitigating factors and Appellant's prospects for rehabilitation; and, fashioned a sentence that "reflects a fixed purpose of keeping [Appellant] in [prison] for the majority of his life." *Id.* at 26 and 32-35.

First, Appellant claims that his aggregate sentence is manifestly excessive, as he was 35 years old at the time of sentencing and will not be eligible for parole until he reaches the age of 74. He claims that, since his age at parole exceeds his adjusted life expectancy of 72.2 years, his sentence is manifestly excessive, as it constitutes a *de facto* life sentence. We may not reach the merits of Appellant's claim, as it does not raise a substantial question under the Sentencing Code.

First, nothing prohibits a trial court from imposing a *de facto* life sentence on an adult offender. ***But see Commonwealth v. Clary***, 226 A.3d

---

> Third-degree murder carries an offense gravity score of 14 with a prior record score of [five]. The sentencing range with a deadly weapon enhancement used starts at 210 months to the statutory limit. For your edification, 210 months breaks down to, roughly, [17 ½] years.

N.T. Sentencing Hearing, 8/14/20, at 90.

571, 581 (Pa. Super. 2020) ("[a] trial court may not impose a term-of-years sentence **on a juvenile** convicted of homicide that equates to a *de facto* [life without parole] sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation") (emphasis added). As such, Appellant's bald claim of excessiveness does not raise a substantial question.

Further, to the extent Appellant challenges the imposition of consecutive sentences in his case, we note that this type of challenge does not usually raise a substantial question. Indeed, this Court previously explained:

> Under 42 Pa.C.S.A. § 9721, the court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. **Commonwealth v. Pass**, 914 A.2d 442, 446–447 (Pa. Super. 2006). The imposition of consecutive, rather than concurrent sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. **Id.** (holding challenge to court's imposition of sentence of six [] to [23] months['] imprisonment and sentence of one [] year probation running consecutive, did not present substantial question). *Compare* [**Commonwealth v. Dodge**, 957 A.2d 1198 (Pa. Super. 2008), *appeal denied*, 980 A.2d 605 (Pa. 2009)] (holding imposition of consecutive sentences totaling 58 ½ to 124 years['] imprisonment for [37] counts of theft-related offenses presented a substantial question because total sentence was essentially life sentence for [a 42-year-old] defendant who committed non-violent offenses with limited financial impact).

**Commonwealth v. Moury**, 992 A.2d 162, 169 (Pa. Super. 2010)

We determine, on a case-by-case basis, whether a challenge to the imposition of a consecutive sentence raises a substantial question. ***See***

*Commonwealth v. Marts*, 889 A.2d 609, 612 (Pa. Super. 2005). We have held that "the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears on its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010).

Based upon our review, Appellant's sentence is not facially excessive in light of his criminal conduct. To be sure, Appellant and his co-conspirators robbed and murdered four people in a basement – in killings that the trial court accurately characterized as executions. *See* N.T. Sentencing Hearing, 8/14/20, at 34-35 (the trial court noted that "it is very, very rare that this court sees a case that cannot be described as anything other than an execution") (some capitalization omitted). Considering Appellant's horrific, brutal, and heinous actions, the trial court's decision to sentence Appellant to serve four consecutive terms of ten to 20 years in prison – one term for each of the four people he murdered – does not "raise[] the aggregate sentence to . . . an excessive level in light of the criminal conduct at issue in the case." *See Mastromarino*, 2 A.3d at 587. As such, we may not reach the merits of Appellant's claim.

We will consider Appellant's remaining claims together. According to Appellant, the trial court abused its discretion at sentencing because the trial court: "focus[ed] solely on the seriousness of the offense [] in crafting [the] sentence;" failed to consider mitigating factors and Appellant's prospects for

rehabilitation; and, fashioned a sentence that "reflects a fixed purpose of keeping [Appellant] in [prison] for the majority of his life." Appellant's Brief at 26 and 32-35.

Appellant's claims are reviewable on appeal. In this case, Appellant filed a timely appeal, preserved his issues in a post-sentence motion, and included in his brief a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119. Further, under our precedent, Appellant's claims raise a substantial question. *See Commonwealth v. Serrano*, 150 A.3d 470, 473 (Pa. Super. 2016) (finding a substantial question where the appellant claimed the trial court failed to consider his individualized needs); *Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (finding a substantial question where the appellant argued the trial court focused on the seriousness of offense, did not consider his rehabilitative needs, and evinced a "fixed purpose of keeping [the appellant] in jail for his life"); *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (finding a substantial question where the appellant challenged consecutive sentences as excessive and the court's alleged failure to consider his rehabilitative needs).

We will therefore address Appellant's sentencing claims, pursuant to the following standard of review:

> The Sentencing Code provides that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The trial court

has discretion within legal limits when sentencing a defendant, and absent an abuse of that discretion, we will not disturb its sentence. An abuse of discretion occurs where the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. The sentencing judge does not have to give a lengthy discourse explaining its reasons for imposing a sentence. However, the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender.

*Commonwealth v. Rominger*, 199 A.3d 964, 970 (citations and quotation marks omitted).

The trial court thoroughly explained the reason for its sentence:

[At sentencing, the trial] court considered [Appellant's] actions before and after the crime, his disturbing text conversations with [] co-defendant [Porter], his initial aggression against Taylor-Williams, and the serious nature of the crimes he committed. [Appellant] pled guilty to murdering the four individuals in the home and admitted that he had knowledge of the plan to kill all four individuals, including the two young women he encountered that night. At his sentencing hearing, [Appellant] claimed that this was a robbery gone wrong and there was not a plan to murder anyone. This claim is rebuffed by the record, which includes [Appellant's] texts both prior to and after his crimes, his firing of the first shot at Taylor-Williams, and his guilty plea. [Appellant's] text, "We are going to handle Will," with the picture of his weapon, shows his intention to harm Taylor-Williams, at a minimum. Even if, as [Appellant] maintains, that the text message did not mean he intended to kill Taylor-Williams, he still fired the first shot. [Appellant] had already obtained the drugs he intended to rob and despite this chose to threaten and shoot decedent Taylor-Williams, before searching the home for additional drugs.

[Appellant's] subsequent text messages with Porter indicated that he wished to see their criminal actions covered in the news, as if to seek a further thrill from watching authorities and the media attempt to make sense of their crime. Before

- 12 -

the news of their crime broke, [Appellant] texted Porter, "Watching the news now. They ain't doing nothing but talking about bullshit." When the news of their crime did break, [Appellant] texted Porter, "Your morning news my nig, sit on back n drink that coffee on ya way n, u know ya nig, on point, holla at u n a few oldhead." [Appellant] continued, "They standing there on Malcolm Street clueless. Hunh, CTFU [("cracking the fuck up")]. And they really gone to say them little bitches was 20 and 30 years old. They aren't. They gone to say this nigga was naked and them little bitches was like 17, 18. The news fucks me up. I can't wait to hear what story they come up with." Further, [Appellant] thanked Porter for "Bringing me back, n bringing the [beast] back out of me." Porter replied that "I kn it was in u jus nd to be released." [Appellant] responded, "Ain't no fucking doubt." [Appellant] responded, "It was under construction."

[The trial] court noted the anguish of the victims as they were being forced at gunpoint into the basement to their deaths and the impact this crime has had on the victims' families. From the moment the defendants decided to force the decedents into the basement, the intention to murder all four victims was obvious, and [the trial] court can only imagine the terror the victims felt, knowing they were waiting their turn to die. Their families are further traumatized by the knowledge that their loved ones' final moments were filled with such dread.

[The trial] court also considered the personal history of [Appellant]. [The] court reviewed [Appellant's] mental health and pre-sentence investigations, which revealed [Appellant] was previously incarcerated, violated the conditions of his parole at least five times, suffered [] mental health issues, and underwent drug treatment for use of marijuana and K2. [The] court noted that while [Appellant] was in high school, his friend died in his arms after being shot. [The trial] court also found him to be sincere in his remorse and noted his diminished role in the murders compared to his co-defendants.

[The trial] court imposed individual penalties for third-degree murder that constitute downward guideline departures from the sentencing guidelines and imposed each sentence consecutively. Any lesser sentence would diminish the

- 13 -

> severity of the offenses. [The] court's sentence falls well below the statutory maximum sentence of [143 ½ to 287] years. Given the gravity of the instant offenses, [the trial court] could have very well imposed such a sentence.
>
> . . .
>
> [The trial] court balanced the possibility of [Appellant's] rehabilitation over the course of his incarceration with the horrific nature of his crimes. The sheer heinousness of these murders and [Appellant's] actions afterward reflect a callousness the likes of which [the trial] court rarely sees. [Appellant] has earned a life sentence; however, [the trial] court exercised great mercy to impose a sentence that allowed him the possibility of parole. Ultimately, [the trial] court's sentence reflects [Appellant's] role as a willing party of these brutal murders.

Trial Court Opinion, 11/13/20, at 5-10 (citations and some capitalization omitted).

On appeal, Appellant claims that the trial court "focus[ed] solely on the seriousness of the offense [] in crafting [the] sentence," failed to consider mitigating factors and Appellant's prospects for rehabilitation, and fashioned a sentence that "reflects a fixed purpose of keeping [Appellant] in [prison] for the majority of his life." Appellant's Brief at 26 and 32-35. However, the trial court's sentence – and its explanation for the sentence – demonstrate that Appellant's claims have no basis in fact. To be sure, this sentence shows that the trial court ably and carefully fashioned individual and aggregate terms of confinement that were consistent with the nature and circumstances of the crimes, the history, character, and condition of Appellant, the protection of the public, the gravity of the offenses as they relate to the impact on the lives of the victims and on the community, the mitigating factors in the case, and

the rehabilitative needs of Appellant. Appellant's claim to the contrary is belied by the record and, thus, fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2021