J-S31036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON WALKER | : | |
| | : | |
| Appellant | : | No. 736 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 29, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0005874-2021

BEFORE: OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED DECEMBER 11, 2023**

Aaron Walker appeals from the judgment of sentence entered following his guilty plea to one count each of corrupt organizations, dealing in proceeds of unlawful activities, criminal use of communication facility, and sale or transfer of firearms-first offense, and five counts of sale or transfer of firearms-second/subsequent offense.[1] Walker challenges the discretionary aspects of his sentence. We affirm.

In August 2022, Walker pled guilty to the above-referenced offenses. The trial court summarized the factual basis of the plea as follows:

> As the factual basis for Walker's guilty plea, he admitted that between December 19, 2019 and July 12, 2021, in Montgomery, Bucks and Philadelphia counties, he engaged in a criminal conspiracy with codefendants Nasim Smalls (hereinafter "Smalls") and Tyrone Gresham (hereinafter

---

[1] 18 Pa.C.S.A. §§ 911(b)(2), 5111(a)(1), 7512(a), 6111(g)(2), and 6111(h)(1), respectively.

"Gresham") for Gresham to purchase firearms for other people. Tyron Gresham purchased at least thirty-seven (37) firearms[4] and affirmed on the official purchase paperwork that he was the actual buyer, which was a false statement. The firearms were real and operable. Walker's role in the conspiracy was to drive Gresham to the gun stores on some of those occasions. In addition, Walker and others provided money for Gresham to purchase the guns. In committing the crimes to which he pleaded guilty, Walker engaged in racketeering activity, and he had a direct interest in the outcome of the conspiracy. Walker was under the age of twenty-one (21) at the time the firearms were purchased and therefore he was not legally able to purchase firearms. To carry out the purpose of the conspiracy (i.e. purchasing the firearms) Walker communicated with his codefendants via cell phone, took photographs of the firearms and contacted gun stores. Following a consent search after Walker's arrest, police recovered two gun boxes that were associated with the purchases that Gresham made. Walker entered an open plea of guilty for six (6) specific illegal transfers of firearms and accepted responsibility for the overall gun trafficking organization through which Gresham successfully purchased a total of thirty-seven (37) guns. This organization was responsible for placing all thirty-seven (37) illegal guns into the community.

[4] As outlined in the affidavit of probable cause attached to the criminal complaint.

Trial Court Opinion, May 4, 2023, at 1-3 (internal citations to guilty plea transcript and some footnotes omitted).

In November 2022, the trial court held a sentencing hearing, where it heard from Montgomery County Detective David Holtzman, Walker's sister Neiara Walker ("Neiara"), and Walker's employer Khaleef Murray. Detective Holtzman testified as the affiant in the case and as an expert in the illegal transfer of firearms. He testified regarding Walker's role in the conspiracy, including that "Walker set up, arranged to go to the gun stores. He contacted

the gun stores. He gave . . . Gresham a ride to the gun stores, he accompanied him to the locations, provided him money to purchase the firearms, and subsequently put the guns on the street." N.T., Nov. 29, 2022, at 15.

Neiara testified about the murder of Walker's father and the impact the murder had on Walker. *Id.* at 53-58. Murray testified that he has known Walker since he was a child, had employed Walker at his car dealership prior to his arrest, and would employ him again upon release from prison. *Id.* 50-52. The trial court also heard Walker's allocution, entertained argument from the assistant district attorney and defense counsel, and reviewed a presentence investigation report ("PSI").

The five convictions for the sale or transfer of firearms-second/subsequent offense were each subject to a five-year mandatory minimum sentence. The trial court imposed three consecutive five-to-ten-year sentences for three of the convictions. For the remaining two convictions, the court imposed five-to-ten-year sentences concurrent to the sentences imposed for the other convictions. For the sale or transfer of firearms-first offense conviction, the court imposed a concurrent two-to-five-year sentence. For the dealing in proceeds from unlawful activity and corrupt organizations convictions, the court imposed one and a half to three-year concurrent sentences. For the criminal use of a communication facility conviction, the court imposed no further penalty. The aggregate sentence was 15 to 30 years' imprisonment.

At sentencing, the trial court gave an extensive on-the-record explanation of its reasons for the sentence:

> This Court has considered a great deal of information. We spent a lot of time together today. I've considered all of the information presented today in the courtroom. I have the benefit of a [PSI], which I read with great interest. I've considered the sentencing memoranda presented and the letters presented in support of Mr. Walker. I considered the arguments of counsel, and, again, the testimony and Mr. Walker's statements. So I want the record to be clear that I've considered everything here. And I've also considered, while it's not really a part of the record, [the assistant district attorney] made reference to it, I've considered the co-defendant, because I was the sentencing Judge in Mr. Smalls' case. So I had the benefit of hearing his role in the organization and I imposed the sentence on him.

> So, Mr. Walker, the first thing I'll say to you is I'm very sorry for the loss of your father. It is very clear that that impacted your life, as one would expect, in a very tragic and negative way. Your sister's testimony was very powerful in that regard. You were a very young person. You're not a child, young child, but as a teenager, very close with your dad, and his death by gun violence I know set you on a trajectory that, perhaps, you could not have anticipated . . . in the earlier days of your life. And it's clear from all of the other information that I've reviewed that things did change for you, and they changed for the absolute worse. And that's something you're going to have to deal with throughout the rest of your life, and there's nothing that the Court can do about that. But I recognize it. I recognize how devastating that kind of event can be in somebody's life, especially someone who's young.

> I have looked at all aspects of this case. And I think that [defense counsel], perhaps, said it best: Mr. Walker took what was started by someone else and ran with it. In this case, Mr. Walker's brother, Nasim Smalls, and Tyrone Gresham started something. I might analogize it to a lemonade or a snack stand. And Mr. Walker took it and ran with it and turned it into a conglomerate ready to be franchised. I mean, he just ran with it.

The difference between what went on in this organization at the end of 2019 and . . . then throughout 2020 compared to 2021 when Mr. Walker was very clearly running things, the difference is massive. A dozen phone calls, ten phone calls in those early days compared to 604 phone calls. Doing research [on] gun shops. Finding out what the inventory was. What was available. Where one can get it. How one can get it. What the hours are. It's pretty stunning. And while I suppose I can sit back and agree with [defense counsel] that that shows a level of skill and an acumen in the business operation here that's impressive, it's impressive, but it's illegal and causes so much danger to the community. And I can't ignore that.

This operation, by [the] end of it, run by you, Mr. Walker, put a lot of guns into our community and has the potential through today and beyond to wreak havoc in our community.

I don't think that [the assistant district attorney] is overstating it when she talks about what can happen, putting guns in the hands of juveniles, in young adults.

Any of us, just look at the newspapers, watch the news on television, you lived in a community where this was part and parcel of daily life. You've lived it. I don't need to tell you. You've lived it. Gun violence is rampant. It's gotten to epidemic proportions. And it happens in our community because there are people who are willing to violate the law and turn this into a business to make money and jeopardize countless lives. I cannot ignore that. That poses a danger to the community. And your actions pose a danger to the community.

It's clear from the testimony that I heard, that by the end of this operation, Mr. Walker was the one running it. He's the one that set up the sales. He's the one that contacted the stores. He's the one that gave rise to Mr. Gresham, the purchaser. He's the one who provided the money for the purchases, who received the guns, and then ultimately was the one who put them in the hands of other people, and it is not lost on this Court that there are still thirty guns out there.

So I look at that, and I look at a very young man, 22 years old, who has a life in front of him, and I need to

balance all of those things. So I'm going to balance those things by imposing a sentence that I believe reflects the seriousness of these crimes.

And I'm going to tell you right now that five to ten doesn't do it. Didn't do it for your brother. And it's not going to do it here. But I am mindful of the fact that you are a young man who will have a life in front of you. And my hope would be that you can take the time that you are going to serve in prison and use it wisely and use it productively so that when you come out, you can take the considerable skills that I know you have and your family knows you have and put it into something lawful and positive and be a productive law-abiding member of society. That's my hope for you, and I imagine it's your family's hope for you, and it's your lawyer's hope for you.

I believe that the sentence I am imposing is necessary[,] that [there is] undue risk that the defendant would commit another crime, that he is in need of correctional treatment, and I think most importantly, any lesser sentence would depreciate the seriousness of the crimes before this Court.

N.T., Nov. 29, 2022, 76-80.

Walker filed a motion for reconsideration, which the trial court denied.

Walker filed an appeal and raises the following issue:

Was [Walker's] sentence manifestly excessive where the trial court imposed consecutive sentences totaling 15-30 years of incarceration well in excess of the standard recommended range suggested by the sentencing guidelines and focused solely on the perceived severity of the crime while ignoring [Walker's] lack of a significant criminal history and excellent prospects for rehabilitation?

Walker's Br. at 4.[2]

_____

[2] Walker filed in this Court a *pro se* letter in which he alleged counsel was ineffective. We remanded to the trial court to determine whether there was an irreconcilable conflict between Walker and his counsel such that he was entitled to new counsel. Order, Aug. 15, 2023. Following remand, new counsel

*(Footnote Continued Next Page)*

Walker argues the trial court abused its discretion when it sentenced him to 15 to 30 years' incarceration because it improperly focused on the nature of the offenses without considering Walker's expression of remorse, acceptance of responsibility, lack of a significant criminal record, difficult childhood, and "excellent prospects for rehabilitation and future employment." *Id.* at 7. He points out that if he had not been subject to the mandatory five-year minimum sentence for the sale or transfer of a firearm convictions, the standard guideline range for the convictions would have been 24 to 36 months' incarceration.

Walker claims the trial court improperly focused on the seriousness of the crime and its impact on the community while ignoring other relevant factors. He maintains the court failed to adequately explain how the sentence "was responsive to the standards embodied in the Sentencing Code, 42 Pa.C.S.A. § 9701, *et seq.*" *Id.* at 10. Walker maintains the court's focus on the nature of the offense and the impact on the community to the exclusion of all other relevant factors was an abuse of discretion. In addition to the factors listed above, Walker notes that he was 21-years-old at the time of the PSI; he had been employed as a home health aide for his grandmother, worked construction for two years, and purchased and resold old cars; he enjoyed his family's support, and would live with family when released from prison; and he had secured employment at a car dealership. He further

entered an appearance in this Court. New counsel has informed this Court that he does not intend to file a new brief.

pointed to the testimony of his sister regarding the impact his father's murder had on him. He argues that his "involvement in criminality was an aberration for a young man with a demonstrated work ethic who had excelled in school and sports until his world collapsed when he lost the guidance of his father." *Id.* at 14. He likens his case to ***Commonwealth v. Coulverson***, 34 A.3d 135 (Pa.Super. 2011).

There is no absolute right to appeal the discretionary aspects of a sentence. ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*). Rather, before addressing a challenge to the discretionary aspects of a sentence, this Court must determine whether the appellant: (1) filed a timely notice of appeal; (2) properly preserved the sentencing issue at sentencing or in a motion to reconsider or modify sentence; (3) included in the appellate brief a concise statement of the reasons relied upon for appeal; and (4) has asserted a substantial question that the sentence is not appropriate under the Sentencing Code. ***See Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa.Super. 2013); 42 Pa.C.S.A. § 9781(b). "[I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case." ***Austin***, 66 A.3d at 808 (citation omitted).

Walker filed a timely notice of appeal, preserved the issue in a post-sentence motion, and included in his appellate brief a concise statement of reasons relied upon for appeal. Further, Walker raises a substantial question in his statement of reasons—the court erred because it "relied solely on the seriousness of [Walker's] crime and its impact on the community" and failed

to consider all relevant sentencing factors when imposing the "unduly harsh" sentence, including, among other things, his rehabilitative needs. Walker's Br. at 8; *see Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa.Super. 2015) (finding a challenge to consecutive sentences as excessive, combined with a claim that the court failed to consider rehabilitative needs and mitigating factors, presented a substantial question).

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Snyder*, 289 A.3d 1121, 1126 (Pa.Super. 2023) (quoting *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018)). "An abuse of discretion occurs where 'the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.'" *Id.* (citation omitted).

In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). We presume a court that has the benefit of a PSI has been adequately apprised of all relevant sentencing information. *Commonwealth v. Jones*, 942 A.2d 903, 908 (Pa.Super. 2008).

In *Coulverson*, the trial court imposed a sentence of 18 to 90 years' incarceration. 34 A.3d at 139. The defendant argued the maximum sentence, which included multiple consecutive statutory maximum sentences, was

clearly unreasonable. We agreed. We reasoned that the trial court's acknowledgement of the PSI was "perfunctory," and it "focused its consideration entirely on the severity of [the defendant's] offenses and the victims' impact statements." *Id.* at 150. We pointed out that "[i]ts discussion evinced no consideration whatsoever of the dysfunction that marked [the defendant's] own life, his cooperation and remorse, his attempts at reclaiming a productive role in society, or the possibility that, with appropriate mental health treatment, he might succeed at rehabilitation after serving a substantial term of [18] years' incarceration." *Id.*

Walker's claim lacks merit. Contrary to his contention, the trial court considered all factors presented, including his traumatic adolescence and rehabilitative prospects. However, the court also considered the seriousness of the crime and its impact on the community and, in balancing the sentencing factors, it imposed an aggregate sentence of 15 to 30 years' incarceration. Unlike the sentence imposed by the trial court in *Coulverson*, the sentence here was individualized and was not clearly unreasonable. Based on the record, we cannot say the court abused its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/11/2023