J-S45020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :             PENNSYLVANIA
                                      :

              v.                 :
                                        :

KEVIN ALFO JARA SANCHEZ III       :
                                        :

             Appellant      :      No. 280 MDA 2023

Appeal from the Judgment of Sentence Entered January 5, 2023
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000247-2022

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED: MARCH 26, 2024**

Kevin Alfo Jara Sanchez, III, appeals from the judgment of sentence, entered in the Court of Common Pleas of Bradford County, after he pled guilty[1] to two counts of aggravated assault,[2] one count of persons not to possess firearms,[3] and one count of aggravated cruelty to animals.[4]  Upon careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Sanchez entered a hybrid guilty plea to dismiss all remaining charges, which included, *inter alia*, attempted criminal homicide, strangulation, rape, and sexual assault; however, sentencing remained at the discretion of the trial court.

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] *Id.* at § 6105(a)(1).

[4] *Id.* at § 5534(a)(2).

On or about February 8, 2022, Jara Sanchez assaulted his then-girlfriend (victim). The assault included a firearm being discharged at least once in the victim's direction and a separate attack with a knife. **See** N.T. Sentencing Hearing, 1/5/23, at 10-11. During the attack, Jara Sanchez held a gun to the victim's head and beat her with the gun. In addition, Jara Sanchez when fired the weapon, a bullet struck the victim's dog, resulting in the dog's death. In the aftermath, Jara Sanchez dragged the deceased dog across the home and burned much of the body. ***Id.*** at 11, 24-25. As a result of the assault, the victim suffered eight broken ribs, a punctured lung, a broken wrist, and widespread bruising. ***Id.*** at 23.

On December 1, 2022, Jara Sanchez pled guilty before the Honorable Evan S. Williams, III, to the above-stated offenses. On January 5, 2023, after ordering a presentence investigation report (PSI), Judge Williams sentenced Jara Sanchez to a term of 8½ to 20 years' incarceration for each of the aggravated assault convictions, 5 to 10 years' incarceration for the persons not to possess conviction, and 3 to 7 years' incarceration for the cruelty to animals conviction. The terms were imposed consecutively, for an aggregate sentence of 25 to 57 years' incarceration at a state correctional institution.

Jara Sanchez filed a motion for reconsideration of sentence on January 9, 2023, asserting that the sentence was excessive and requesting a concurrent sentence within a lower range of the Sentencing Guidelines. **See** Post Sentence Motion, 1/9/23. On January 19, 2023, the trial court denied Jara Sanchez's motion, but did modify the sentence to include a one-year

period of reentry supervision consecutive to his incarceration, pursuant to 61 Pa.C.S.A. § 6137.2.

On February 21, 2023,[5] Jara Sanchez filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Jara Sanchez sets forth the following issue on appeal:

> Whether the sentencing court abused its discretion in imposing an excessive sentence [that] failed to consider [his] rehabilitative needs []?

Appellant's Brief, at 8.

Jara Sanchez challenges the discretionary aspects of his sentence. Such a claim is not appealable as of right; rather, a defendant's appeal is considered a petition for permission to appeal. *Commonwealth v. Williams*, 562 A.2d 1385, 1386-87 (Pa. Super. 1989) (en banc). Before this Court can address such a discretionary challenge, an appellant must invoke this Court's jurisdiction by: (1) filing a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) including in his brief a concise statement of reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) raising a substantial question that the

---

[5] The notice of appeal was timely, as the 30-day appeal period ended on a Saturday and the following Monday was a legal holiday. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such time period shall fall on a Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation."); Pa.R.A.P. 903 (notice of appeal to be filed within 30 days after entry of order from which appeal is taken).

sentence appealed from is not appropriate under the Sentencing Code. ***Commonwealth v. Swope***, 123 A.3d 333, 337 (Pa. Super. 2015). The existence of a substantial question must be determined on a case-by-case basis. ***Commonwealth v. Cruz-Centeno***, 668 A.2d 536, 545 (Pa. Super. 1995).

In this case, Jara Sanchez filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included the requisite Rule 2119(f) statement in his brief, and, thus, has met the first three requirements for review. ***See*** Appellant's Brief, at 7. Therefore, we now determine whether Jara Sanchez has raised a substantial question. In his Rule 2119(f) statement, Jara Sanchez contends that the trial court did not adequately consider his rehabilitative needs and imposed an excessive sentence when it ordered each sentence to run consecutively. ***Id.*** at 7. Specifically, Jara Sanchez argues that the court sentenced him only based on the seriousness of the offense, gave no consideration to his statement that fatally shooting the victim's dog was an accident, and was overly influenced by the victim's statement to the court and graphic pictures presented by the Commonwealth. ***Id.*** at 14-16.

This Court has held that an excessive sentence claim, in conjunction with an assertion that the court failed to consider rehabilitative needs and mitigating factors, raises a substantial question. ***See Swope***, 123 A.3d at 339 (substantial question raised where defendant challenged consecutive sentences as excessive and claimed court failed to consider rehabilitative needs and mitigating factors); ***Commonwealth v. Raven***, 97 A.3d 1244,

1253 (Pa. Super. 2014) (excessive sentence claim in conjunction with assertion that court failed to consider mitigating factors raises substantial question). Accordingly, we will consider the merits of Jara Sanchez's claim.

Our standard of review of the discretionary aspects of a sentence is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006). Further, the Appellate Court may not reweigh the factors considered by the trial court when imposing sentence. ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009). Finally, where the sentencing court has the benefit of reviewing a PSI, we presume that the judge was "aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Hallock***, 603 A.2d 612, 616 (Pa. Super. 1992).

Pursuant to the Pennsylvania Sentencing Code, an appellate court must vacate a sentence if the trial court erroneously applied the Sentencing Guidelines, if the circumstances of the case would cause the application of the guidelines to be clearly unreasonable, or if the court sentenced outside the guidelines in an unreasonable manner. ***See*** 42 Pa.C.S.A. § 9781(c). In

reviewing the record on appeal from a discretionary aspects of sentencing claim, we consider:

(1)  The nature and circumstances of the offense and the history and characteristics of the defendant.

(2)  The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3)  The findings upon which the sentence was based.

(4)  The guidelines promulgated by the commission.

*Id.* at § 9781(d).

Jara Sanchez argues that while he was sentenced within the standard-range,[6] the court's application of the guidelines was unreasonable in his case. *See* Appellant's Brief, at 14; *see also* 42 Pa.C.S.A. § 9781(c)(2).  In support of his argument, Jara Sanchez cites to ***Commonwealth v. Coulverson***, 34 A.3d 135 (Pa. Super. 2011), where the defendant argued that his aggregate sentence of 18 to 90 years in prison was "manifestly excessive and that the

_____

[6] Given the applicable offense gravity scores and Jara Sanchez's prior record score, the standard-range sentences were as follows:  (1) aggravated assault with a deadly weapon, minimum of 90 to 102 months; (2) aggravated assault, minimum of 84 to 102 months; (3) persons not to possess, minimum of 60 months; and (4) aggravated cruelty to animals, minimum of 27 to 40 months. *See* 204 Pa. Code § 303.16(a) (Basic Sentencing Matrix).

The trial court sentenced Jara Sanchez to a minimum term of incarceration of 102 months for each aggravated assault conviction, 60 months for persons not to possess, and 36 months for aggravated cruelty to animals, all within the standard range of the sentencing guidelines.  Each sentence was ordered to be served consecutively. *See* N.T. Sentencing Hearing, 1/5/23, at 7-9, 35-36, 39.

trial court failed to state sufficient reasons on the record to justify its imposition." *Id.* at 139. In *Coulverson*, this Court found that:

> [the trial court's] discussion of sentencing rationale [was] so summary as to offer no suggestion that it considered anything other than the seriousness of Coulverson's offenses. . . .[T]he court offered no acknowledgement whatsoever of the Sentencing Guidelines except to document that the lower end of the sentences it imposed was in the standard range.

*Id.* at 146. Moreover, "the court's discussion offers a regrettably scant explanation for imposition of sentence on any of Coulverson's convictions." *Id.* The Court emphasized that a sentence "may still be excessive" if the lower end of the sentence is within the standard guidelines range, but "the upper end of the sentence imposes a term unlikely to end during the defendant's natural life span[.]" *Id.* at 148.

Jara Sanchez suggests that, similar to *Coulverson*, his minimum sentence falls within the standard guidelines, but his maximum sentence reaches the statutory limits. *See* Appellant's Brief, at 14 (citing *Coulverson*, 34 A.3d at 143). In addition, he asserts that the trial court determined his sentence solely "because of the seriousness of his offense, as evidenced by the sentencing transcript." *Id.* As such, Jara Sanchez argues that, just like in *Coulverson*, his sentences for both aggravated assaults were clearly unreasonable. *See id.*; *see also Coulverson*, 34 A.3d at 150.

With respect to his sentence for aggravated cruelty to an animal, Jara Sanchez argues that the court failed to consider his rehabilitative needs when it applied the sentence consecutive to his other sentences. *See* Appellant's

Brief, at 15. Jara Sanchez suggests that the court was influenced by "an emotional statement by the victim regarding her dog[,] as well as graphic images of the dog's attempted cremation[.]" *Id.* at 16 (citations omitted). Jara Sanchez states that, instead, the court should have considered that the dog's death was an "unintended by-product of [a] single criminal episode" and that he had no criminal history relating to cruelty to animals. *Id.* at 15-16. Therefore, applying this sentence consecutively, rather than concurrently as consistent with his rehabilitative needs, was clearly unreasonable. *Id.* at 17-18. We disagree.

During sentencing, the court had the benefit of a PSI and highlighted that the report included information about Jara Sanchez's education, alcohol use, mental health history, employment history, and criminal history. *See* N.T. Sentencing Hearing, 1/5/23, at 10. The court also stated that the PSI noted that Jara Sanchez had three protection from abuse (PFA) order violations while incarcerated and awaiting adjudication in the instant matter, and was convicted for contacting the victim in violation of that PFA order. *Id.* at 11. At sentencing, Judge Williams heard from Jara Sanchez's counsel, Kyle Rude, Esquire, about his client's mental health issues, that Jara Sanchez never intended to harm the victim's dog, and that he took responsibility for his actions. *Id.* 14-17. Judge Williams then gave Jara Sanchez the opportunity to speak, which he declined. *Id.* at 18.

After hearing argument from the Commonwealth, the court heard from the victim, in addition to a submitted victim statement, about her fear of

people coming after her, her permanent injuries and physical pain because of the assault, that her dog was her "best friend," and that she asked Jara Sanchez to stop hitting her during the assault, but he did not listen. *Id.* at 28-29. Jara Sanchez was again given the opportunity to speak, at which time he admitted to his actions, admitted to violating the PFA order three times, admitted what he did was wrong, and apologized to the victim and asked for her forgiveness. *Id.* at 30-31. However, he also attempted to suggest other possible causes of the victim's permanent injuries, denied killing the victim's dog, and said he did not try to kill the victim. *Id.* at 31-32.

Before determining Jara Sanchez's sentence, the trial court noted the severity of the victim's injuries and significance of the assault, the testimony presented at the hearing, the circumstances of the assault, and Jara Sanchez's background, stating, "[I am] familiar with everything." *Id.* at 34-35. Judge Williams further stated the following as reasoning for the sentence imposed:

> I think these sentences appropriately reflect the serious nature of the crimes, the impact on the victim and the community. They recognize that Mr. [Jara] Sanchez may have had [] or may continue to have some emotional or mental difficulties. [] [E]ach of these sentences will be run consecutive to each other.

*Id.* at 36. In its January 5, 2023 sentencing order, the trial court also included the following statement:

> Each sentence is imposed for the reasons stated of record, including the nature and circumstances of the criminal conduct, the impact on the victim and the community, the need to incarcerate [Jara Sanchez] for an extended period of time[,] as well as require [Jara Sanchez] to be subject to supervision if and when he is granted parole, as well as the history and characteristics of [Jara Sanchez] as set forth in the [PSI].

Sentencing Order, 1/5/23.

Finally, after denying Jara Sanchez's post-sentence motion to modify his sentence, Judge Williams provided an additional explanation for the sentence imposed.

> Contrary to [Jara Sanchez's] claims, the sentence imposed by the [c]ourt of total confinement of twenty-five (25) to fifty-seven (57) years was appropriate given (i) the nature and circumstances of the criminal conduct, which included throwing a knife and discharging a firearm (that [Jara Sanchez] was prohibited from having) at or toward the victim, (ii) the physical injuries [Jara Sanchez] caused to the victim, which included broken ribs, a broken wrist, and external and internal injuries, (iii) the lasting emotional and physical impact on the victim, (iv) the impact on the community, which was significant given the extreme nature of the conduct, (v) the need for [Jara Sanchez] to receive a significant sentence of total confinement to protect the community and to try to ensure that when [Jara Sanchez] is released he would be subject to supervision on parole for an extended period of time, (vi) the sentencing guidelines, (vii) the fact the criminal conduct involved separate and distinct actions and separate and distinct crimes that resulted in separate and distinct harm, and (viii) the rehabilitative needs, history, and condition of [Jara Sanchez].

Order, 1/19/23, at ¶ 3. In addition, in response to Jara Sanchez's argument that "his treatment of the deceased dog had a larger than appropriate impact" on the sentencing court, Judge Williams stated that Jara Sanchez's "treatment of the deceased dog (which he apparently burned), had little, if any, bearing on the sentence as compared to [Jara Sanchez's] treatment of the living victim." *Id.* at ¶ 4.

The court's reasons for the sentence imposed, clearly stated above, in conjunction with the court's review of the PSI, were sufficient to demonstrate that the court properly considered all relevant factors when imposing Jara

Sanchez's sentence.  **See Hallock**, **supra**.  Further, we may not reweigh the sentencing factors considered by the trial court when imposing sentence.  **See Macias**, **supra**.  Accordingly, Jara Sanchez's claim that the court imposed an excessive sentence and failed to consider his rehabilitative needs, and imposed a clearly unreasonable consecutive sentence, lacks merit.  We find no abuse of discretion.  **See Shugars**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/26/2024